NELLIE BREINER, Appellee, v. THOMAS J. NUGENT, Appellant.

**Examination of witnesses:** LEADING QUESTIONS. Rarely will a
1 cause be reversed because of leading questions put by counsel, although the testimony is in the form of a deposition.

**Admission of incompetent evidence:** PREJUDICE. The admission of
2 incompetent evidence on rebuttal in proof of an admitted fact is not prejudicial.

**Seduction:** EVIDENCE OF DAMAGES. In a civil suit for seduction the continuous acts of intercourse, including subsequent conception and the birth of a child, may be shown in connection with other evidence of seductive arts, as bearing on the question of plaintiff's damage.

**Evidence:** MOTION TO EXCLUDE. A party cannot speculate upon the answer of a witness by permitting him to answer without objection, or if objecting to the question he fails to take an exception to the ruling admitting the evidence, and then where the answer is responsive move to strike the same for the reasons urged in the objection to the question.

**Seduction:** EVIDENCE. Evidence that defendant in a seduction suit went to a material witness against him and denied any association with the plaintiff, for the evident purpose of getting some statement from the witness which might be used against the witness should she be called to testify, is held competent under the circumstances as shown.

**Same:** AGREEMENT TO· MARRY. In an action for seduction the exact date on which an alleged promise of marriage was made, which plaintiff claims was an inducement to the act of intercourse, is not material if the promise was in fact prior to the seduction.

**Admission of incompetent evidence:** WHEN NOT REVERSIBLE ERROR. A cause will not be reversed on the ground that the court admitted incompetent evidence touching a matter which is admitted of record to be true by the party complaining of the ruling.

**Pleadings as evidence:** RESTRICTION TO A SPECIAL PURPOSE. Where the pleadings are introduced to contradict the evidence of the party filing them on some particular matter, the allegations therein relating to entirely different matters are not available to the party pleading them as substantive evidence, and the jury should be instructed to give them no consideration as such.

**Seduction:** INSTRUCTIONS. An instruction is not necessarily erroneous because when standing alone it does not state the entire law on a given subject; it is only when it is abstractly and concretely wrong or misleading or directly in conflict with other instructions that a reversal will be ordered. In the instant case the instructions when construed together are held to properly limit the time, sufficiently define the promises and arts which would form the basis of a charge of seduction, and that such promises and arts must be false and did in fact deceive.

**Order of argument:** DISCRETION. The order of argument is largely

discretionary with the trial court, although in a general way prescribed by statute; and in the absence of a showing of abuse and ground for belief that prejudice resulted, a reversal will not be ordered merely because of failure to follow the statute.

**Same:** SEDUCTION: PROOF OF NON-MARRIAGE. In order to recover damages a plaintiff in a seduction action must prove that at the time of seduction she was an unmarried woman.

*Appeal from Greene District Court.*— HON. F. M. POWERS, Judge.

THURSDAY, APRIL 11, 1907.

REHEARING DENIED, TUESDAY, NOVEMBER 19, 1907.

THIS is a civil action for seduction. Upon trial to a jury, a verdict was returned for the plaintiff, upon which, after a reduction by the trial court, judgment was rendered and defendant appeals.— *Reversed.*

*Salinger & Korte,* and *E. B. Wilson,* for appellant.

*Gallaher & Graham,* for appellee.

DEEMER, J.— Plaintiff commenced her action in January of the year 1904, by filing a petition, in which she alleged that defendant seduced her on or about March 23, 1903. Thereafter she filed a substituted petition, in which she averred that the seduction occurred March 30, 1903, and, in an amendment to the substituted petition, she alleged that it occurred November 1, 1902, and that intercourse was also had on three different occasions in the month of March, 1903, which last resulted in pregnancy and the subsequent birth of a child. She also pleaded special damages resulting from prolapsus of the uterus, mental anguish caused by said pregnancy and birth of a child, and for medical services. The answer was a general denial. At the conclusion of the testimony, defendant filed a motion

to require plaintiff to elect as to which act of intercourse she desired to recover for. This was overruled, but plaintiff thereafter withdrew all claims for damages by reason of the seduction of plaintiff on March 30, 1903. The trial court then submitted the case to the jury on the proposition as to whether or not defendant seduced plaintiff in November of the year 1902.

The twenty-first instruction, given by the court at defendant's request, reads as follows:

All evidence bearing upon the questions of childbirth, pregnancy, loss of health, diseased or displaced womb, loss of time, doctor's bills, value of nursing in plaintiff's sickness, physical and mental pain resulting from pregnancy and childbirth, and any other consequences resulting from the claimed intercourse between the parties hereto subsequent to the claimed seduction on November 1, 1902, and all damages claimed to be resulting therefrom, are by the court withdrawn from your consideration, and, in your deliberations in this case, you will confine yourselves to the claimed seduction alleged to have occurred about November 1, 1902, if from the evidence you find that the plaintiff was then seduced by the defendant, as seduction is defined and explained in these instructions.

The reason for this instruction was, undoubtedly, plaintiff's withdrawal of the alleged seduction occurring in March of the year of 1903. Plaintiff claimed in her testimony that she became engaged to marry defendant on or about October 7, 1902, and that he seduced her in virtue thereof and of other artifices, etc., on or about November 1, 1902.

Complaint is made of some leading questions propounded to plaintiff by her counsel. This is largely a matter within the discretion of the trial court, and this is true, al-

1. EXAMINATION OF WITNESSES: leading questions. though the testimony is taken in the form of a deposition. In rare instances only will a case be reversed because of leading questions put by counsel. No abuse of discretion sufficient to justify a reversal is shown here.

One Reynolds was a witness for defendant, who gave testimony as to certain admissions made by plaintiff. On cross-examination, he said he was not defendant's attorney in this suit; that he had never appeared of record, but that he had assisted defendant in some matters, and had never withdrawn his appearance as one of defendant's attorneys in the case. He also admitted that he had taken depositions and interviewed one or two witnesses. In rebuttal, plaintiff was permitted to show an appearance for defendant by Reynolds in a criminal case against him (defendant), and also produced the certificate of a notary public before whom a deposition in this case was taken, showing an appearance of Reynolds for defendant. This certificate was not, perhaps, admissible in evidence; but, as the witness had already admitted his taking of depositions for defendant, no possible prejudice resulted.

2. ADMISSION OF INCOMPETENT EVIDENCE: prejudice.

Plaintiff was permitted to prove the birth of a child and consequent suffering, expense, etc. The evidence shows that this child must have been conceived some time in March of the year 1903, and it is contended that such testimony was inadmissible. If this were a criminal case, where it was claimed that plaintiff was seduced the previous October or November, doubtless such testimony would be inadmissible. *People v. Kearney,* 110 N. Y., 188 (17 N. E. 736). This, for the very plain reason that the birth of a child at a time which shows conception to have taken place something like four months after the alleged seduction is said to have occurred, would have no tendency to prove seduction on the prior date. But being a civil case, and the acts being in the nature of continuing ones, subsequent conception may be shown in connection with other testimony showing seductive arts, as bearing upon the damages to which plaintiff is entitled. In civil actions for seduction, it is the universal rule that continuous acts of intercourse, resulting from false promises or artifices, may be shown. Indeed, some of the cases treat the last act, if it

3. SEDUCTION: evidence of damages.

results in childbirth, as the seductive one, especially where the question relates to the bar of the statute of limitations. *Ferguson v. Moore,* 98 Tenn. 342 (39 S. W. 341); *Davis v. Young,* 90 Tenn. 303 (16 S. W. 473); *Russel v. Chambers,* 31 Minn. 54 (16 N. W. 458); *Haymond v. Saucer,* 84 Ind. 5; *Keller v. State,* 102 Ga. 506 (31 S. E. 92); *Lemmon v. Moore,* 94 Ind. 40. In *Thompson v. Clendening,* 1 Head (Tenn.) 295, is is said:

" The whole of defendant's intercourse with the seduced, and all the circumstances connected with it, are to be regarded as one entire transaction, as well in view of the question whether defendant is the father of the child as to show the extent of the injury, in aggravation of damages." In the amendment to the substituted petition to which we have referred, plaintiff alleged that the seduction occurred on or about November 1, 1902, and further averred: " That after the 1st day of November, 1902, and on or about the month of March, 1903, sexual intercourse between this plaintiff and defendant was again had upon three different occasions, the last of which occurred on or about the 30th day of March, 1903, and your plaintiff avers that her consent to such intercourse, upon each of such occasions, was obtained by the defendant by means of such false promises of marriage, deception, deceit, flattery, arts, and wiles as are hereinbefore alleged."

In view of these allegations, there was no error in permitting plaintiff to give evidence of acts of intercourse occurring after November 1, 1902, and of the birth of a child occurring as a result thereof. *Smith v. Milburn,* 17 Iowa, 30. When the testimony was offered, it was clearly competent and material. After plaintiff had withdrawn all claims for damages by reason of the seduction on March 30th, the trial court gave instruction 21, which has already been quoted. Of this defendant has no cause for complaint. What we have said as to the testimony regarding pregnancy disposes of a claim that the court was in error in admitting testimony of experts

regarding plaintiff's condition of health after the birth of her child.

II. A witness by the name of Shipman, for whom plaintiff and defendant worked, testified that defendant came to her and said, " Mrs. Shipman, have you heard the story

4. EVIDENCE: motion to exclude.

they have got against me ? " to which witness answered that she had. Defendant then stated, " Well, I never had anything to do with that girl in my life, I never went with her," to which witness responded that he was the only man she had ever seen in her company. This testimony is set out in narrative form in the abstracts, and the record with reference thereto is as follows: " Answer is moved to be stricken for the same objections made to the question. Overruled. Defendant excepts." The objections and motion to strike made to the testimony of Mrs. Shipman as to what she said to defendant were that same was incompetent, immaterial, irrelevant, and not binding on defendant. The questions eliciting this testimony are not set out, and we do not know what they were. At any rate, no question is made regarding the ruling on the objections to the questions. The alleged error here was in not sustaining the motion to strike the testimony. There are at least two reasons why this matter cannot be complained of as error. If no objection was made to the question, or no exception taken to the ruling on the objection, and the answer was responsive thereto, as we must assume that it was, in the absence of a motion based upon the ground that it was not responsive, then defendant is in no position to complain of the ruling on his motion to strike the answer. He will not be allowed to speculate upon the witness' answer, and, if he is in no position to complain of the ruling which resulted in giving of the testimony, he cannot by motion after the testimony has been received based upon the same ground as the objections to the question, insist that the court again pass upon the matter — the answer being unfavorable to him. He should stand upon his objection to

the question; otherwise he might speculate upon the answer, and, if in his favor, allow it to stand, otherwise have it stricken out. The record is in no such shape as that defendant may complain of the ruling.

Moreover, the fact that defendant went to the witness to deny a story which was in circulation, and made an untrue statement with reference to his connection with the girl, was

5. SEDUCTION: evidence.

probably admissible in evidence. Defendant made these statements to one who had employed both plaintiff and defendant, and who knew that they had been in each other's company, and he was either trying to exculpate himself, or to get a statement from a material witness against him, which might be used against her should she be called as a witness. Again, the last statement made by the witness to the defendant, under the circumstances shown, would seemingly call for a denial on his part, if it were not true. There was no error here of which defendant may justly complain.

III. Plaintiff claimed that the seduction occurred on or about November 1, 1902, and that an engagement to marry was made October 7th preceding. Defendant intro-

6. SAME: agreement to marry.

duced testimony to show that he was not with plaintiff October 7th, but was in another town, to-wit, Carroll, at that time. In view of this testimony, the court instructed, in effect, that, if the jury found that defendant was in Carroll at the time when plaintiff said she became engaged to him at Jefferson, then they should find that no engagement was made between the parties at that time, and left it to the jury to say whether or not plaintiff was in fact seduced at the time she claims. Of this complaint is made. If the action were for breach of promise, and not for seduction, doubtless, defendant's contention that the court was in error in its charge would be sound; but, the action being for a claimed seduction in November, the exact date of the alleged agreement of marriage was not material, if it in fact antedated the act of

sexual commerce. Direct evidence of the precise circumstances, of the time, language, or manner of an engagement, is not necessary; but it may be inferred from such conduct and behavior or admission of the parties as are customary between persons under a marriage contract. *McConahey v. Griffey,* 82 Iowa, 564. Plaintiff testified to defendant's admissions of promises to marry after the alleged November seduction occurred, to such conduct on his part before that time as that the jury may have properly inferred a promise to marry at some future time before the alleged seduction occurred, and she is corroborated to some extent by other testimony in the case. As the exact date of the claimed engagement was not material, the jury may have found that plaintiff made a mistake in fixing the date thereof as October 7th, but still have found an engagement prior to the seduction. *Kennedy v. Shea,* 110 Mass. 152.

Defendant claims that there is no testimony that plaintiff was unmarried when the alleged seduction occurred, and that the court erred in admitting incompetent testimony to prove that she was unmarried. As to the latter point, the record is peculiar. Mrs. May Breiner was introduced as a witness for plaintiff, and she testified that plaintiff was not out of Greene county, until she went to South Dakota. Defendant's counsel cross-examined the witness as to her knowledge of plaintiff's whereabouts, and, at the conclusion of the cross-examination, we find this: " Defendant admits that no license was issued in this county to marry Nellie Breiner, but objects that it is immaterial, incompetent, and irrelevant, although proved." This is the entire record on this matter. Surely defendant cannot demand a reversal on this ground. There is no showing that plaintiff offered to establish the admitted fact, that it was admitted in evidence, or that there was any exception taken to anything which was done. By such an admission defendant cannot get reversible error into a case. To the proposition that there was no testimony that

7. ADMISSION OF INCOMPETENT EVIDENCE: when not reversible error.

plaintiff. was unmarried, we need only say that the case in this respect is ruled by *Egan v. Murray,* 80 Iowa, 180.

Defendant introduced in evidence various pleadings filed by plaintiff, in each of which she stated that she was an unmarried woman, and the entire pleadings were read to

**8. PLEADINGS AS EVIDENCE: restriction to special purpose.**

the jury. Thereafter defendant asked an instruction to the effect that the jury could not consider these declarations that plaintiff was unmarried, as evidence of that fact. This was refused, and none was given covering that point. We are of opinion that the instruction should have been given. The declarations were clearly self-serving, and the pleadings were introduced for the purpose of showing contradictory statements made by plaintiff as to the time when the claimed seduction took place. We shall have more to say of this matter in another paragraph of this opinion.

IV. Defendant complains of the seventh and ninth instructions, which read as follows: " (7) In considering whether or not defendant did in fact seduce Nellie Breiner,

**9. SEDUCTION: instructions.**

you may take into account, so far as shown by the evidence, the attention paid her by defendant, if any, the false promises, if any, or artifices used, if any, and, in general, anything said and done by him, which, in the light of common experience, was likely to break down her virtue, if virtuous, and induce her to submit to him." " (9) Not only must it be shown by the evidence that an act of sexual intercourse took place between plaintiff and defendant; but you must be convinced by the evidence that plaintiff was induced to submit thereto by some art, influence, or promise held out or exercised by defendant. If, prompted by her own lustful desires, or lack of virtue, she yielded to the mere request of plaintiff, however urgent, it is not seduction." These should be considered with instructions 6, 8, and 10 bearing upon the same subject, which read in this wise: " (6) The mere fact of illicit sexual intercourse between plaintiff and defendant, if established, does

not, of itself, establish the charge of seduction. It is necessary that the evidence should go farther and show that plaintiff's consent to such intercourse was obtained by false promise of marriage, flattery, protestations of love, deception, or other seductive means or artifices employed by defendant for a greater or less length of time prior to such intercourse." " (8) To constitute seduction, it is not sufficient to establish sexual intercourse between parties; but the plaintiff must also show that the defendant accomplished his purpose by some artifice, or that she was induced to yield to his embrace by flattery or deception. If, without being deceived, and without any false promises, deceit, or artifices, she voluntarily submits to the connection, the law affords her no recovery." " (10) If you find from the evidence in this case that plaintiff voluntarily, and in response to mere solicitations or persuasions, and without artifice or promise of marriage, on the part of defendant, submitted to sexual intercourse with the defendant, it would not be seduction, and plaintiff cannot recover."

Counsel contend that 7 and 9 are erroneous: First, for the reason that they do not limit the time; and, second, that the jury was not told as to the nature of the promises, artifices, or influences which would form the basis of a charge of seduction, and was not instructed that the promises must be false, and that the arts and promises must have deceived. These matters were fully covered by the other instructions of which 7 and 9 form a part, and there was no room for misapprehension upon any of these matters. The seventh instruction has direct support in *State v. Stolley,* 121 Iowa, 111. The possible inference to be gained from the ninth instruction, considered apart from any other, might in itself be erroneous. *State v. Hamann,* 109 Iowa, 646. But taken in connection with other instructions, and viewed, as it should be, in the light of an attempt on the part of the court to state a rule favorable to defendant, we think there was no error. In the instruction criticised, the court was attempt-

ing to state what would not amount to seduction, rather than what would constitute such a wrong, leaving the affirmative of the proposition to be explained in other instructions. The idea of deception is fully covered in the sixth and eighth instructions, which we have quoted. The ninth seems to have been borrowed either from *Smith v. Milburn,* 17 Iowa, 34, 35, or *Delvee v. Boardman,* 20 Iowa, 448. It undoubtedly announced a correct rule of law, in so far as it attempts to state it; that is to say, it is not sufficient to show sexual intercourse. It must also be shown that the woman was induced to submit thereto by some art, influence, or promise held out or exercised by the man charged with the wrong. Just what arts, influences, or promises will be sufficient are not stated in this instruction; but the matter is covered in the other instructions given by the court, of which no complaint is made, notably in the sixth, eighth, and tenth. The other part of the instruction is favorable to defendant, and it is not complained of. When the instructions are read together, as they should be, there was no error. It is not enough to justify a reversal that a detached sentence standing alone may not state the entire law upon any given subject. Unless it be both abstractly and concretely wrong or misleading, or in direct conflict with other instructions, we are not justified in considering the detached parts of an instruction erroneous. The idea of deception is made prominent in the instructions as given, and appellant's authorities are not in point.

V. During the closing argument of one of plaintiff's counsel, one of defendant's attorneys claimed that counsel was introducing new points, and served notice that

10. ORDER OF ARGUMENT: discretion.

he would insist on closing the argument upon these propositions. When plaintiff's counsel closed, defendant's counsel asked that he be permitted to answer the closing argument upon four propositions which he claimed were new. This request was denied. These matters all related to points involved in the

case, and the trial court may well have concluded that they had been fully covered in previous arguments. No complaint is made of the argument of plaintiff's counsel; but it is insisted that defendant's counsel had the right to reply thereto by reason of the introduction of new matter. There seems to have been but one matter which was in any sense new, and, as to that, the court was vested with a very large discretion. The order of argument and the conduct thereof, while prescribed by statute in a general way, is nevertheless peculiarly within the sound discretion of the trial court, and, in the absence of a showing of a clear abuse thereof, and of ground for believing that prejudice resulted, no reversal should be had on account of failure to follow the statute. *Preston v. Walker,* 26 Iowa, 207 ; *Fountain v. West,* 23 Iowa, 14, and cases cited.

The new matter which was referred to by plaintiff's counsel in argument was the statements made in the pleadings of plaintiff which defendant introduced in evidence, 11. SAME: seduction: proof of non-marriage. wherein plaintiff declared that she was an unmarried woman. Plaintiff's counsel insists, in his reply argument, that these statements were binding and conclusive on defendant, and that there was no necessity for other proof that she was unmarried at the time it is claimed she was seduced. When defendant's counsel was denied the right to meet this branch of the argument, he proposed the instruction which we have heretofore mentioned, to the effect that the jury should not accept the statements in these pleadings as any evidence of that fact. We have already said that this instruction should have been given, and the thought is now emphasized, when we note the effect that the refusal may have had upon the case. Defendant's counsel was denied the right to respond to the argument which first presented this matter to the jury, and his request for an instruction covering the same matter was refused. Under such a record, the jury may well have found this necessary element to recovery upon wholly in-

competent evidence. Although defendant's counsel read the entire pleading to the jury, he had the right to have the irrelevant and incompetent parts taken from it upon proper request, and his offered instruction was such a request. Plaintiff, in order to recover, was required to prove that, at the time of the claimed seduction, she was an unmarried woman, and this must be established by competent testimony.

VI.　To the claim that the verdict is without support, and is the result of passion and prejudice, we need not respond, further than to say that defendant had many advantages to which he was not entitled as a matter of law, and, save in the respects stated, he has no ground for complaint. There seems to be no error, save in the refusal to give the instruction asked.

The result is, however, that the judgment must be, and it is, *reversed*.