SELINA DALRYMPLE, *Appellee,* V. WILLIAM GREEN,
*Appellant.*

No. 17,826.

SYLLABUS BY THE COURT.

1. DAMAGES—*Breach of Contract of Marriage—Seduction May be Proven.* In an action for damages for the breach of a contract of marriage, seduction may be proven and considered in aggravation of the damages.

2. ———— *Results from Seduction—Not Elements of Damages—Instructions.* Where, in such case, evidence is produced of seduction, accomplished by reason of the promise, and that pregnancy resulted from the seduction, miscarriage from the pregnancy, and sickness from the miscarriage, and an instruction is requested which, in effect, would take from the jury the consideration of the evidence of pregnancy and of the successive results thereof, it is error to refuse it.

3. ———— *Same.* Where, in such case, there is evidence that some weeks after the alleged seduction sexual intercourse was repeated, from which resulted pregnancy, from which miscarriage, from which sickness, it is error to refuse an instruction to the jury designed to eliminate the evidence of pregnancy and the successive results thereof from the consideration of the jury in determining the amount of damages, if any, to be allowed; neither the promise of marriage nor the breach of it could be the proximate cause of the pregnancy, the miscarriage, or the resulting sickness.

Appeal from Shawnee district court, division No. 1. Opinion filed February 8, 1913. Reversed.

*Z. T. Hazen, R. H. Gaw, Joseph G. Waters,* and *John C. Waters,* all of Topeka, for the appellant.

*Edwin D. McKeever,* of Topeka, and *Walter D. Jones,* of Chicago, for the appellee.

The opinion of the court was delivered by

SMITH, J.: This action was brought in the district court of Shawnee county for breach of contract of marriage alleged to have been entered into between

43—88 KAN.

appellant and appellee on the 8th day of November, 1909. Trial was had to a jury, and verdict was returned and judgment rendered in favor of appellee for $5500. Motion for new trial was overruled and appeal taken to this court. Very numerous assignments of error are made in the case, of which it is necessary to refer to only a few.

The appellee in her petition alleged that appellant's deceased wife was the sister of her father; that in the fall of 1909 and long prior thereto she had been engaged in the occupation of teaching school; that she was thirty-six years of age; that during the fall of 1909 appellant wrote her several letters urging her to resign her school and come to Topeka and take a position in his store, and live in his house with himself, his son and his daughter-in-law; that she accepted the proposition, and arrived in Topeka on the 7th day of November; that she was met at the railway station by the appellant and taken to the home of himself and son and daughter-in-law; that on the second night after her arrival the appellant without her consent entered the room where she was sleeping, got into bed with her, and "by force and threats of exposure of their situation to the other members of the household and promises of a speedy marriage accomplished the seduction of this plaintiff, who had up to said time, as aforesaid, been a chaste and pure woman." Also that the said defendant by persuasions and promise to marry the plaintiff at various other times, to wit, about November 30, December 12, January 4, January 21, again sustained improper relations with the plaintiff, from which relations the plaintiff became pregnant and remained in such condition for sixty days, when she suffered a miscarriage.

The answer was a general denial. On the trial the appellee testified to the facts substantially as alleged in her petition.

Without reciting in full or following in exact order

Dalrymple v. Green.

as given, the appellee testified, in part, as follows:

"I left for Topeka the first week in November. It was between the last week in October and the first week in November that I received some letters in regard to my coming to Topeka to go to work. I did not tell you on yesterday that I came down here to go to work in the grocery store as cashier. I came down here for the purpose and expectation of eventually becoming the wife of William Green; . . . I came down here with the intention of being in his home and becoming his wife. I had no marriage contract with him at that time. I had no written contract with him. There are two kinds of contracts. I came down here with the expectation of being at William Green's home. The contract I have sued upon was made after I came to Topeka."

Later appellee testified as follows:.

"Q. Where was your room located? A. Beside Mr. Green's room; a small room.

"There were heavy rolling doors between our rooms. I had been asleep and was awakened; was awakened by the rumbling noise of the door in opening. The doors were very heavy and made such a racket, made considerable noise. The next I saw was Mr. Green. He was right by my bed, and as I fully awakened I saw Mr. Green, as he entered the room, as he came up to me. At first he did not say anything. He rolled back the bedclothes; just pushed back the bedclothes. Didn't say a word at first; reached out and pushed back the bedclothes; did not remove them fully from my person. I rose up in bed, and he began to say something to me. He says, 'Siney, just never mind.' I asked him what this all meant. I said, 'Uncle Will, what do you mean?' Of course I was close to him, in a way. He sat down on the bed then, and I rose up in bed and was fully awakened. I began to say something to him about his actions in coming in the room, and he said, 'Never mind, Siney; we will just have a little private talk.'"

She also testified that she was thirty-six years of age, had taught school twenty years, and had never had intercourse before; that the appellant's son, the

son's wife, two children and a maid, during this and other times specified, were sleeping on the same floor of the dwelling house, viz., the second floor; that appellant came to her room three or four times thereafter. With reference to this she said:

"I was unwell on the 9th; had my courses regularly up to the 9th of January; no interference of any kind or character; I am sure of that. I became pregnant the month after he was with me on the 15th or 16th; it was because of his having been with me on the 15th or 16th."

The appellant, on the other hand, testified and denied that he had ever at any of the times stated had sexual intercourse with her or had promised to marry her; also that he had never been in her room when she was in bed.

No other witness testified to any fact or circumstance bearing upon the question of promise of marriage or of seduction, except that a Mrs. Norris testified as to conduct between the appellant and appellee said to have occurred in Chicago some time before the appellee came to Kansas, which is not claimed to have indicated any improper relation between the parties, but that each had a kindly regard, if not affection, for the other.

Numerous assignments of error are made by the appellant, very few of which refer to the rulings upon the introduction of testimony, and none of which we think are well taken.

Appellant complains that the jury were instructed that they might take into account the plaintiff's seduction, without any definition of that term being given them. It is argued that the jury may have assumed that any procuring of sexual intercourse with the plaintiff amounted to seduction. However, no instruction on the subject was requested by appellant, so that the omission to give one does not constitute error.

Upon another trial a proper instruction should be given if requested.

There are also numerous objections to the instructions given and refused by the court. The first of these which we care to discuss is instruction No. 11, which was requested by appellant and refused by the court. It seems that no instruction similar to this was given. It reads:

"In weighing the evidence which has been introduced before you in this case you have a right to take into consideration and call to your assistance the knowledge and experience common to mankind for the purpose of throwing light upon the question submitted for your determination. You may take into consideration the age of both plaintiff and defendant, the disparity or difference in their years, the amount of the defendant's wealth, if the evidence shows him to be a man of wealth, the time, the place, the surroundings and the circumstances under which the plaintiff claims the defendant promised to marry her and had sexual intercourse with her."

In any trial before a jury in which there is conflicting evidence an instruction of this nature is proper, but only under unusual circumstances is the failure or refusal to give such an instruction regarded as sufficiently erroneous to justify a reversal of a judgment. We think it is not too much to say in this case that the evidence of the appellee herein is extraordinary and of such a character, especially in view of the great noise she says appellant repeatedly made in entering her room, near midnight and almost in the presence of the members of his own household, that it should have been carefully scrutinized, and that the giving of the instruction requested would have tended to lead the jury to such scrutiny. The instruction ought to have been given, but we are not disposed to place the reversal of the case alone upon the refusal to give it.

A more serious question, we think, is involved in the

refusal of the court to give instruction No. 13 requested by the appellant. It reads:

"If you should find that there was a contract of marriage made between the plaintiff and the defendant on the night of the 8th day of November, 1909, and that the plaintiff is entitled to recover on account of the breach thereof, and should further believe that the defendant had sexual intercourse with the plaintiff at any time or times other than the night of the 8th of November, 1909, then I instruct you that you would not be authorized to take into consideration any sexual intercourse that occurred at such other time or times in determining what amount of damages you will award to the plaintiff."

The courts of last resort in several states have held that seduction can not be proven in aggravation of damages in an action for the breach of a promise of marriage. This is on the ground that the recognized common-law rule is that a woman can not recover for her own seduction, the parties being *in pari delicto,* or that she should not be allowed to do indirectly that which the law forbids her to do directly; that an action for seduction is given to the parent or to him who stands *in loco parentis* to the person seduced, and to permit the person seduced, herself, also to recover would subject the seducer to double damages. (*Wrynn v. Downey,* 27 R. I. 454, 63 Atl. 401, 4 L. R. A., n. s., 615.)

In the case note to the case in 4 L. R. A., n. s., 615, *supra,* the authorities upon this question are collated, and it appears therefrom that by far the greater weight of authority sanctions proof of seduction by means of a promise of marriage in aggravation of damages in an action for a breach of the contract. Indeed, this is admitted by Chief Justice Douglas in the Wrynn case, *supra,* but the decision is justified on the ground that from a long course of decisions it has become the settled law of that state, which, if changed at all, should be changed by the legislature and not by

Dalrymple v. Green.

the courts.   In *Sramek v. Sklenar*, 73 Kan. 450, 85 Pac.
566, the rule has been recognized in accordance with
the law prevailing in most of the American states and
against the rule in the Wrynn case.

By instruction No. 13, appellant evidently sought to
eliminate any claim for damages other than for the
breach of the contract made on the night of November
8, 1909, and the seduction accomplished on the same
date, if the jury should find such a contract and a
breach thereof.

Summing up the claims of the appellee, the contract
of marriage and the breach thereof constituted the ap-
pellee's cause of action.   The seduction was not a cause
of action, but, as we have seen, was proper for the con-
sideration of the jury in determining the amount of
damages to be allowed.   Subsequent acts of intercourse
constitute neither seduction nor ground for compensa-
tion or aggravation of damages, unless, as in *Sramek v.
Sklenar*, supra, the long continuance of the unlawful
relations for years under repeated promises of mar-
riage or other circumstances justify the inference that
the promises were not made with any intention of re-
deeming them, but were intentionally fraudulent.   In
such case exemplary damages may and should be al-
lowed.   In the Sramek case no portion of the damages
were designated as exemplary, yet it is apparent that
the verdict and judgment were sustained by reason of
the long-continued fraudulent acts of the seducer.

In this case fraud is not pleaded, and if the appellant
made the promises there is hardly a suggestion that
they were not made in good faith.   According to ap-
pellee's testimony the relations continued less than
three months.

As we have seen, seduction may be proved in ag-
gravation of damages, but we have been cited to no
decision that goes further and holds that pregnancy
or any of the hardships that follow therefrom can also
be considered to increase the damages, neither have

we found such a decision. On the other hand, in *Giese v. Schultz*, 65 Wis. 487, 27 N. W. 353, it was said:

"In an action for breach of a promise of marriage, where it is alleged that, by virtue of such promise, the defendant seduced the plaintiff and got her with child, the jury in estimating the damages, may consider the loss of virtue and reputation and the mental suffering and sense of disgrace caused by the seduction, but can not allow any additional damages because the plaintiff was gotten with child or suffered a miscarriage."

There was evidence of pregnancy, miscarriage and sickness resulting therefrom. In view of the large amount of damages allowed, we can not say that the verdict and judgment were not materially influenced by such evidence. The refusal of the instruction permitted the consideration of that evidence, and the refusal thereof was error.

The judgment is reversed and the case is remanded for a new trial.

MASON, J. (dissenting) : I dissent from the second and third paragraphs of the syllabus, and from the corresponding part of the opinion. In an action for the breach of promise of marriage all circumstances should be considered which might bear upon the extent of the plaintiff's injury. Anything in the relations of the parties that adds to the humiliation which results to the plaintiff from the defendant's refusal to keep his word should be considered in determining the amount of recovery. A woman who, as a result of seduction, accomplished by means of a promise of marriage, has become pregnant, naturally and almost inevitably suffers greater humiliation from the failure of the seducer to perform his promise, than if that consequence had not followed. The increased publicity given her misfortune by means of her condition is alone sufficient to make it a basis for the aggravation of damages. This seems clear on principle. It accords with the conclud-

Dalrymple v. Green.

ing part of the opinion in *Sramek v. Sklenar,* 73 Kan. 450, 85 Pac. 566.   It is supported by what is decided, said or intimated in the following cases, several of which are cited to that effect in 5 Cyc. 1014, note 34, and 8 Cent. Dig. c. 953, § 43 :  *Tyler v. Salley,* 82 Maine, 128, 19 Atl. 107 ; *Hotchkins v. Hodge,* (N. Y. Supr. Ct.) 38 Barb. 117 ; *Jarvis v. Johnson,* 2 Ohio Dec. 312 ; *Tubbs v. Van Kleek,* 12 Ill. 446, 449 ; *Churan v. Sebesta,* 131 Ill. App. 330, 333 ; *Johnson v. Levy,* 122 La. 118, 47 South. 422 ; *Wilds v. Bogan,* 57 Ind. 453.

*Musselman v. Barker,* 26 Neb. 737, 42 N. W. 759, has a contrary tendency.

Evidence of the plaintiff's pregnancy was admitted without objection, and no reference to it is made in the instructions.   The point on which the case is reversed was raised only by asking an instruction, which was refused, to the effect that the jury should not consider any act of sexual intercourse subsequent to that in which the plaintiff's seduction culminated.   I see no ground for distinguishing between the various acts of intercourse.   The later instances were as much a consequence of the seduction as the first one.   (35 Cyc. 1318; *Henry D. Thompson v. William Clendening,* [38 Tenn.] 1 Head. 287, 295; *Davis v. Young,* 90 Tenn. 303, 304, 16 S. W. 473; *Haymond v. Saucer,* 84 Ind. 3, 6; *Breiner v. Nugent,* 136 Iowa, 322, 111 N. W. 446.)

I am authorized to say that Justices BURCH and BENSON concur in this dissent.