[Civil No. 4147. Filed October 11, 1943.]

[141 Pac. (2d) 847.]

CHARLES E. BURTON, Appellant v. ERNA VALENTINE, Appellee.

Mr. Henderson Stockton, Mr. Eli Gorodezky, Mr. S. N. Karam, and Mr. J. W. Cherry, Jr., for Appellant.

Mr. Anthony T. Deddens, for Appellee.

STANFORD, J.—This is a breach of promise case brought for $50,000. It was tried before a jury in the Superior Court in Phoenix, Maricopa County. A verdict of $5,000 was awarded appellee.

Charles E. Burton was a well-known livestock man with interests mainly in Northern Arizona. He was a married man in the year of 1930, at the time the parties to this action first met, but was not living with his wife and was divorced from his wife, Mabel Frankfurter Burton, in California on October 31, 1932.

Appellee was the wife of Carl A. Valentine and lived with her husband at Grand Canyon, Arizona. She remained his wife until their divorce, August 20, 1931.

The parties herein first met at a country dance near Flagstaff, Arizona, in July, 1930.

It is important that we quote part of the short complaint and answer in this cause.

Quoting from appellee's first amended complaint:

"II. That during the month of December, 1930, in consideration of a proposal of marriage from the defendant, the plaintiff accepted said proposal and agreed to marry the defendant.

"III. That thereafter said promise of marriage was renewed by the defendant from time to time.

"IV. That during the month of December, 1932, at Phoenix, Arizona, in consideration of an agreement by plaintiff then and there made that the plaintiff, who was then unmarried, would marry the defendant within a reasonable time, the defendant, who was then also unmarried, renewed his said promise to marry the plaintiff within a reasonable time.

"V. That thereafter said defendant postponed the marriage from time to time but continued to renew said promise of marriage on occasions too numerous to set forth herein with any particularity, and without fixing any definite date.

"VI. That plaintiff, relying upon said promises, had always remained ready and willing to marry the defendant, but that the defendant has made it impossible to fulfill his promise to marry the plaintiff, he having married another woman on the 2nd day of September, 1936, at Riverside, California."

Quoting from appellant's answer:

"II. Denies each and every, all and singular, the allegations of Paragraphs II, III, IV, V, VI, VII and VIII of plaintiff's first amended complaint.

"III. That defendant, Charles E. Burton and Susan Cusson were married in the Town or City of Sinaloa, State of Sinaloa, Republic of Mexico, on the 15th day of March, 1931, and that on the 2nd day of September, 1936, at the City of Riverside, County of Riverside, in the State of California, a second marriage ceremony was performed between the defendant, Charles E. Burton and Susan Cusson. That since the 15th day of March, 1931, defendant has at all time been a married man, and incapable of contracting marriage with the plaintiff. That at all times mentioned herein, the plaintiff had full knowledge that defendant, Charles E. Burton, was a married man as alleged herein."

In order to clearly state the contentions of appellant, we quote his assignments of error

"1. The Court erred in instructing the jury 'if you further find that by reason of the defendant's promise to marry the plaintiff, if there was such a promise,

and by other seductive means employed, if any, he seduced the plaintiff, and that thereby she became pregnant, you should, in estimating her damages, take these facts into due consideration in aggravation of damages as tending to increase the humiliation, grief, shame and distress, if any, which she has suffered by reason of her abandonment by the defendant, and should fix the amount of the recovery accordingly,' for the reason that seduction and debauchery is not an element of damage since acts of sexual intercourse preceded any proposal or promise of marriage. No act of intercourse was induced or brought about by any proposal or promise of marriage.

"II. The Court erred in instructing the jury that it should, in estimating appellee's damage, consider seduction and debauchery as an element, for the reason that acts of intercourse preceded any proposal or promise of marriage, and for the further reason that seduction and debauchery can be an element of damage only where the female is seduced and debauched solely in consequence of, and wholly by reason of, a proposal or promise of marriage. Appellee did not have intercourse with appellant solely or at all in consequence of a proposal or promise of marriage.

"III. The Court erred in permitting appellee, a woman of sexual experience, who, willingly and without inducement begat of a proposal or promise of marriage, participated in acts of sexual intercourse, to recover damages for seduction or debauchery in this action for breach of contract of marriage.

"IV. The Court erred in permitting the consideration and recovery of enhanced or increased damage for seduction and debauchery in this case for breach of contract of marriage, because acts of intercourse were freely indulged in by appellee while she was married and living with her husband and after she had knowledge that appellant was married.

"V. The Court erred in instructing the jury that if appellant seduced the plaintiff 'and that thereby she became pregnant, you should in estimating her damages, take these facts into due consideration in aggravation of damages as tending to increase the humiliation, grief, shame and distress, if any, which

she has suffered by reason of her abandonment by the defendant and should fix the amount of the recovery accordingly,' for the reason that pregnancy is an element of damage only where the condition of pregnancy becomes obvious to the friends of the female or to the public.

"VI. The Court erred in instructing the jury upon the measure of damage to the effect that the jury, among other things, might consider 'the money value or worldly advantage of a marriage which would give her a permanent home and the advantage of such a domestic establishment as would be suitable to her as the wife of a person of the defendant's estate and station in life,' because it assumed, contrary to the evidence in this case, that the appellee would have obtained a permanent home and that the appellee would have received the advantage of such domestic establishment as would be suitable to her as the wife of a person of the defendant's estate and station in life. This instruction was a prejudicial comment upon the evidence and asserted the existence of facts contrary to the evidence.

"VII. The court erred in instructing the jury 'in this case, gentlemen of the jury, the defendant testified that he held himself out to be a single man at the time he met the plaintiff, and it further appears in evidence that the plaintiff was divorced from her former husband on August 20, 1931. You are instructed that any promise of marriage made by this defendant to the plaintiff after the 20th of August, 1931, or a renewal after that date, of any promise of marriage which he may previously have made to this plaintiff, was a valid and binding promise of marriage, providing that you further find by a preponderance of the evidence that the plaintiff accepted such promise of marriage and agreed to marry the defendant,' for the following reasons: (1) there was an unjustified comment upon the evidence and a misstatement of the evidence wherein the Court stated that appellant testified he held himself out to be a single man at the time he met appellee; (2) the jury was erroneously told that appellee was free, after the entry of the decree of divorce by the Superior Court

of Coconino County, Arizona, on August 20, 1931, to make a valid contract to marry; (3) appellee could not make a valid contract to marry until after the expiration of one year from the entry of the decree of divorce in the Superior Court of Coconino County, Arizona, on August 20, 1931; (4) a promise of marriage made by appellant to appellee within the year subsequent to August 20, 1931, though accepted by appellee, was void because appellee was incapable of contracting marriage during said year; (5) because an accepted promise of marriage, made while appellee was herself married to another man than appellant, could not create a valid and binding contract of marriage when renewed after appellee was divorced; and (6) a promise of marriage made during the time the person accepting the promise is married is wholly void and may never have life breathed into it by any renewal of such void contract by any subsequent act or promise.

"VIII. The Court erred in permitting the jury to consider pregnancy and abortion as an element of damage, because the existence of pregnancy and abortion was not known to the friends of appellee or to the public and there is no allegation of injury of health to appellee in consequence thereof.

"IX. The Court erred in refusing to vacate the judgment herein and to grant a new trial for the reason that the verdict upon which it is based in said cause was excessive and was the result of prejudice and passion on the part of the jury in favor of appellee and against appellant and for the reason that there was no competent evidence sufficient to sustain said judgment in the amount of Five Thousand Dollars."

Appellant contends that matters prejudicial to him were submitted to the jury, yet no objections were raised by him when the question of pregnancy two times caused by sexual intercourse with the appellant and the abortions following were testified to by the appellee.

Mainly as we see the defense of appellant, he was a married man during all the times appellee claimed

he entered into contracts with her to marry, and being married could not enter into such contracts. If not, she was married part of the time and she could not enter into such contractual relations, not only while she was married, but for a period of one year thereafter. And, as the appellant's answer shows, while he was not married to his wife, Mabel Frankfurter Burton, and aside from the inability of the appellee to marry because of her marriage to Carl Valentine, he escapes liability because he had married Sue Cusson on the 15th day of March, 1931, and if that was illegal because of his marriage in the Republic of Mexico, he married her again on the 2d day of September, 1936, in the United States.

We quote from 8 Am. Jur. 848, as follows:

"According to the view of a number of courts a man, even though married and consequently incapacitated to execute a contract or promise of marriage to another, may not escape the liability for damages occasioned by his promise to marry an unmarried woman, if the latter enters into the contract with him in ignorance of the fact that he has a wife living, . . . . "

By the evidence of this appellee, she did not first know that he was married to Mabel Frankfurter Burton, but later did, and knew of the divorce. She did not know until 1936 that he was married to Sue Cusson. The appellee also testified that she did not know he was a married man in December, 1930, when the first proposal of marriage was made by appellant, but did know it later, but after the divorce in that instance in Los Angeles, California, the marriage contract was renewed between them in December, 1932.

That in Northern Arizona when appellee first met the appellant he was known as a single man. As taken from the transcript of evidence, under cross-examination appellant testified as follows:

"Q. Isn't it true that you were known in Flagstaff and Williams and Grand Canyon and that section of the state as a single man in July, 1930, when you met Mrs. Valentine? A. That is what most every one thought, yes.

"Q. Everyone understood that to be the fact. A. That is right."

And, the appellee testified as follows:

"Q. On any occasions, Mrs. Valentine, while you and Mr. Burton were out at public places how did Mr. Burton introduce you to friends of his? A. Off and on by the name of Mrs. Burton."

■ Appellant submits in support of his contentions, among others, the cases of *Nolan* v. *Glynn*, 163 Iowa 146, 142 N. W. 1029, Ann. Cas. 1916C, 559; *Dalrymple* v. *Green*, 88 Kan. 673, 129 Pac. 1145, 43 L. R. A., N. S., 972; *Vnuk* v. *Patterson*, 118 Or. 602, 247 Pac. 766, 768, 47 A. L. R. 394.

In the *Vnuk* v. *Patterson* case it recites:

"This legislation establishes the public policy of this state. The plaintiff is here asking the court to enforce a contract made, if at all, within less than 2 months after the granting of the divorce between the defendant and his former wife, whereas the law says neither of them was then capable of contracting marriage with a third party."

We find, however, that the Oregon law has a statute which reads:

" . . . 'that neither party shall be capable of contracting marriage with a third person.' "

Section 27–807, Arizona Code Annotated, 1939, reads as follows:

" . . . Either party may marry again only after one (1) year has elapsed from the date of the decree of divorce, if, however, proceedings are begun prior to the expiration of the said one (1) year to set aside

said decree then neither party may marry again until said proceedings are finally terminated.''

We hold that there is nothing in this paragraph of ours that would prevent a contract of marriage before the expiration of the one year after divorce.

Volume 8 Am. Jur. 869, reads as follows:

''It has been held that pregnancy should not be considered in assessing damages although the pregnancy is the result of seduction accomplished by means of the promise. The weight of authority, however, is against this doctrine and in favor of the view which considers pregnancy as an aggravation of damages, for the grief and humiliation of a woman occasioned by the breach in such a situation necessarily would be greater than would be likely had not pregnancy followed. It has been held that even where the latter view prevails, however, such proof of the effect of pregnancy on bodily health is not admissible for that is a consequence of the physical condition, and in no sense of breaking the promise of marriage. So, because of the lack of casual connection, the fact that a miscarriage occurs or an abortion is committed may not be considered in aggravation of damages. . . . ''

Appellant in his answer alleged that he married Susan Cusson in the Town or City of Sinaloa, State of Sinaloa, Republic of Mexico, on the 5th day of March, 1931. It was evidently obvious to the jury, as it is to this court, that that affirmative defense for the purpose of showing that he was not able to make a contract after the time of the divorce of the appellee because he was a married man, but on the 15th day of March, 1931, the appellant was still the husband of Mabel Frankfurter Burton, who lived in Los Angeles, and from her he was finally divorced on October 31, 1932.

██ ██ Unless this appellee knew, and that was a matter of fact for the jury to determine, that the appellant was actually married during the times he made

the proposals of marriage to her, she had the right to rely on such promises. We hold that in December, 1932, at Phoenix, Arizona, appellant could, and did, renew his promise to marry appellee and that there was a valid contract entered into between them.

In respect to further instructions we cite Section 21–1019 Arizona Code Annotated 1939:

"At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed. No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury."

We find that the appellant submitted no instructions and practically all of the instructions to which objections have been made in this court were submitted by the appellee and marked "Given" by the trial court, and no objections were raised to them. Practically the whole case of the appellant is brought to this court by him on the instructions.

In the case of *Standard Oil Co. of California* v. *Shields,* 58 Ariz. 239, 119 Pac. (2d) 116, 119, Chief Justice Lockwood, late of this bench, in keeping with the usual law of our state in commenting on instructions, stated the following:

"If any of the instructions were objectionable on the ground that they were ambiguous or did not fully state the law, defendants had a chance to object thereto before the jury retired to consider its verdict, and while it does appear that general objections were

made to some of them, there is nothing in the record to show the particular point objected to nor the grounds of the objection. We are satisfied that no reversible error appears in the instructions.''

As we might understand it, appellant in this case looked over the instructions submitted by appellee, and knowing the stock instructions of the court, must have especially consented to the instructions, for, as stated, he submitted none and made no objections. When instructions were offered, the appellant, who now complains, should have promptly objected, it being his duty, as the ''Arm of the Court'' as well as in protection of his case, to promptly object.

■ The case has been tried before a jury, and not nine, but twelve, jurors agreed, and in keeping with this court's views, we will support the verdict of the jury and judgment of the court below.

■ A litigant cannot omit the performance of a duty and then take the advantage of it. In other words, as stated, the appellant practically assented to all of these instructions by his failure to object, or failure to submit instructions of his own.

The appellant cites the case of *Rio Grande Oil Co., a Corporation,* v. *Pankey and J. T. Pankey,* 50 Ariz. 529, 73 Pac. (2d) 707, 711, ''Where it appears from the record that damages have been awarded which are grossly in excess of the amount shown to have been sustained by any reasonable theory of the evidence, it will be presumed that the verdict of the jury was actuated by passion and prejudice, and a new trial will be granted.''

Jurors who tried this case had the great opportunity to look into the eye of the appellee, who as a young woman came from Chicago to start her life in the West and started to be a waitress at a Harvey House in Northern Arizona. They saw that her opportunities in life theretofore had been but little. As

good citizens they appreciated hearing that for sixteen years thereafter she lived with her husband at Grand Canyon; that she had built up her life, no doubt, from a child who had but little chance. They also heard the evidence at first hand and close range of the appellant, Charles E. Burton; one who left his home as a mere child twelve years of age and has since had to make his way alone; a man who has done remarkably well for the little opportunity he had in life; one who served as a member of our State Legislature as a State Senator; a man who, by his thrift and energy, became an able and prosperous citizen; and then that same jury in its deliberations, having heard the cause for four days, gave unto this appellee one-tenth of her demand against the appellant, which in justice, we believe is entirely fair.

■ Then in reference to the case of *Rio Grande Oil Co.* v. *Pankey, supra,* we think it cannot be said that the verdict of the jury was so grossly in excess of the amount shown to have been sustained by any reasonable theory of the evidence, that it could have presumed that the jury was actuated by passion and prejudice.

■■ In the case of *Long* v. *Forbes,* 58 Wyo. 533, 136 Pac. (2d) 242, 244, the court said:

"The right of trial by jury includes the right to have the jury pass upon questions of fact by determining the credibility of witnesses and the weight of conflicting evidence. . . . After the trial judge has given the verdict his approval by denying a new trial, and the case is brought here for review, we must accept the verdict as a final and conclusive finding of the facts if there is any substantial evidence to support it, although we may feel that we would have come to a different conclusion. . . . "

■ In the case of *Dawson* v. *Salt Lake Hardware Co.,* Idaho, 136 Pac. (2d) 733, 738, it is said:

" . . . 'It is only where the evidence is clearly and wholly against the finding of the jury or where some essential fact necessary to establish liability has not been proven, that this court can interfere.' "

We hold that the verdict of the jury was in accordance with the evidence adduced at the trial. We also hold that in all respects the appellee is entitled to the judgment appealed from.

The judgment is accordingly affirmed.

McALISTER, C. J., and ROSS, J., concur.