238 P.2d 1098

**TIPTON et al v. BURSON.**
No. 5371.

Supreme Court of Arizona.
Dec. 17, 1951.

Moeur & Moeur, and Shute & Elsing, all of Phoenix, for appellants.

George M. Sterling, of Phoenix, for appellee.

LA PRADE, Justice.

This is an appeal by appellants (defendants below) from a money judgment rendered against them in an action wherein appellee was plaintiff. The parties will be referred to as they were in the lower court, plaintiff and defendants.

Plaintiff sought damages charging that the defendants intentionally and unlawfully induced one Jack Clem to break a pasturage contract he had with him. Plaintiff alleged that on and prior to the 6th of March, 1949 he controlled by way of patent and state land leases several thousand acres of grazing land in Paradise Valley north of Scottsdale, Arizona; that on said last mentioned date he entered into an agreement with Clem wherein and whereby he agreed to pasture for Clem on said lands 300 head of calves for 90 days at the rate of $1.50 per head per month; that on the 7th day of March, Clem moved some of the cattle on the premises and

"IV.

"That on said 7th day of March, 1949, the defendants Kenneth Caswell and Carl Tipton willfully and unlawfully advised and stated to the said Jack Clem that the plaintiff herein had no right to lease said pasturage to said Jack Clem and represented to said Jack Clem that the plaintiff controlled no water upon said range; that at said times the defendants, and each of them, were working in furtherance of said partnerships and threatened to jerk and run said cattle if said cattle were permitted to stay upon said range."

"V.

"That at all times mentioned the plaintiff did control watering places in said area adjacent to said lands hereinbefore mentioned; that the said Jack Clem when advised by the defendants that they would run and jerk his cattle and break his cattle from watering at the waterholes upon said range, immediately caused his said cattle to be removed from plaintiff's land to plaintiff's damage."

After issue was joined, the matter was submitted to a jury which returned a verdict in favor of plaintiff on which the judgment appealed from is based.

The evidence discloses that the range on which it was proposed that the cattle should graze comprises an area of approximately ten miles square, all of which was unfenced and referred to as "open" range, open only in the sense that it was not fenced. Practically all of the lands were privately owned. Plaintiff owned and controlled some 6,000 acres while the defendants owned and controlled approximately 4,000 acres. In the

area controlled by defendants they had four watering places for cattle, the water being pumped from wells and delivered into suitable watering troughs. There were two additional watering sites, one called the Zaebst place and the other the Lemons place. These latter two places were privately owned, and not part of the lands owned or leased by either the plaintiff or defendants.

On the morning of March 8th, the defendants interviewed Mr. Clem in Scottsdale and at the Zaebst well, where the cattle had been unloaded. At this conversation when all the parties were present, the defendants claimed that they owned and controlled *all* of the water, including the Zaebst and Lemons places, and the defendant Tipton advised Mr. Clem that his cattle would not be permitted to water at *any* of the watering places, whereupon Clem on that same day removed his cattle. The evidence further discloses that the Zaebst ranch had formerly belonged to the defendant Caswell; that Zaebst some five years previously had purchased it from Caswell with a "gentleman's agreement" or offer on the part of Zaebst to permit Caswell's cattle to water at the Zaebst place. Caswell, at that time, owned approximately 128 head. There was no reservation in the deed reserving this right to Caswell. On March 8th, the day of the controversy, Mr. Zaebst was interviewed by the parties. At this meeting, Mr. Zaebst notified all of them

that he was willing that Mr. Caswell's cattle water at his place and that he had entered into an agreement with plaintiff to permit plaintiff and those in privity with him to water their cattle at his place. Mrs. Lemons testified that she and her husband had entered into an agreement in the preceding February to allow plaintiff and those in privity with him to water cattle at their place. The Lemons well was approximately seven miles distant from the Zaebst well.

Before trial the court had denied a motion to dismiss the complaint based upon the ground that it failed to state a cause upon which relief could be granted. Failure to grant the motion is assigned as error. Error is also claimed because the court failed to instruct the jury on the law governing the theory of plaintiff's case, and because there was no pleading to sustain such instructions as were given and no evidence to support the instructions given, and in denying motion for new trial for the reason that there was no evidence that defendants acted with malice, express or implied.

In support of their first assignment of error, appellants argue that the complaint does not state a cause of action of unlawful interference for the reason (a) that it did not allege knowledge on the part of the defendants of the existence of the contract, and (b) that malice was not charged.

We shall now consider the claim that the complaint fails to set forth a claim for re-

lief. The rule applicable is Rule 8(a), Sec. 21–404, A.C.A.1939. This section reads as follows:

"A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain

"(1) A short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it.

"(2) A short and plain statement of the claim showing that the pleader is entitled to relief, and

"(3) A demand for judgment for the relief to which he deems himself entitled. Relief in the alternative or of several different types may be demanded."

Defendants, in support of this assignment, urge:

1. That to create a liability for unlawful interference with a contract, it must be alleged that the party to be charged had knowledge of the existence of the contract, and

2. That the interference was malicious.

 The complaint, after having alleged the existence and terms of the contract between plaintiff and Clem, then alleged in paragraph IV, quoted above, that defendants had willfully and unlawfully advised and stated to Clem that plaintiff had no right to lease pasturage and controlled no water. We think that the only reasonable inference to be drawn from this pleading is that defendants had knowledge of and were aware of the agreement between plaintiff and Clem. The question then is, did the defendants, without any right so to do, intentionally interfere with the plaintiff-Clem pasturage contract in such a manner as to preclude plaintiff from reaping the profits of said contract? It is not contended that the right to perform a contract and to reap the profits resulting therefrom do not constitute a property right subject to protection. One who maliciously induces another to breach a contract with a third person, whether for personal services or otherwise, is liable to such third person for the damages resulting from the breach. Meason v. Ralston Purina Co., 56 Ariz. 291, 107 P.2d 224, 228. The malice referred to has been broadened to include unjustified interference with the contractual relationship. (id) In this latter case, we pointed out that "The malice required in actions for damages for wrongfully interfering with a contract does not necessarily imply spite or ill will but malice in its legal sense and by this is meant 'the intentional doing of a wrongful act without justification or excuse.'"

Generally, on question of malice, see Griswold v. Horne, 19 Ariz. 56, 165 P. 318, L.R.A.1918A, 862. The rule and its application is succinctly stated in the case of Campbell v. Gates, 236 N.Y. 457, 141 N.E.

914, 915, wherein it is said: "The great weight of authority in this country and in England is to the effect that, if A. has a legal contract with B., either for the rendition of service or any other purpose, and C., having knowledge of the existence thereof, intentionally and knowingly, and without reasonable justification or excuse, induces B. to break the contract, by reason of which A. sustains damage, an action will lie by A. against C. to recover the same. * * * The action of C. is malicious, in that, with the knowledge of A.'s rights, he intentionally and knowingly and for unworthy or selfish purposes, destroys them by inducing B. to break his contract. It is a wrongful act, done intentionally, without just cause or excuse, and from this a malicious motive is to be inferred. This does not necessarily mean actual malice or ill will, but the intentional doing of a wrongful act without legal or social justification. * * *"

██ Defendants' contention that they are not chargeable with legal malice, in that they were asserting equal or superior rights to the water, is not borne out by the evidence. Defendants had no rights in or control of the Lemons well. Their only claim to control the Zaebst well had its origin in the "gentlemen's agreement" which the defendant Caswell thought extended to him the exclusive right to the use of the well and its facilities. When the defendants informed Mr. Clem that they would not permit his cattle to water at the Lemons and Zaebst places, they were very definitely asserting rights and powers which were not legally available to them and certainly calculated to induce Mr. Clem to break his contract with plaintiff, which he did. The jury so found and from the evidence was justified in so finding.

█ With reference to the instructions complained of, the record discloses that no objection was made by defendants in the lower court to the giving or failure to give any instruction. The law in this respect is controlled by Rule 51, Sec. 21–1019, A.C. A.1939, which provides as follows: "At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed. No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury."

Defendants contend that this rule applies only to those instructions which are offered and given or refused and in no circumstances applies to a failure upon the part of the court to define the issues and instruct on the law applicable thereto. They

point out that Sec. 21–1018, A.C.A.1939, provides: "After the evidence is closed and before the argument, *the court shall charge the jury.* The charge shall, at the request of either party, be written out by the reporter, signed by the judge, and filed with the clerk." (Emphasis supplied.)

It is the position of defendants that the trial court has the duty, upon its own motion, to instruct upon decisive issues formed by the pleadings and evidence and failure so to do is reversible error, citing Brown v. Page, 98 Conn. 141, 119 A. 44; Kelly v. Employers Casualty Co., 202 Okl. 437, 214 P.2d 925; Caccamo v. Swanston, 94 Cal. App.2d 957, 212 P.2d 246; Vogel v. Rushing, 202 Okl. 277, 212 P.2d 665. A more appropriate citation would have been our case of Reah v. Jupin, 68 Ariz. 335, 206 P.2d 558, 559, wherein this general statement appears: " * * * However, it is the court's responsibility to instruct the jury on all phases of the law applicable to various fact situations developed during the course of the trial, and the court in the instant case apparently believed there was sufficient evidence adduced on the question of punitive damages for this issue to go to the jury."

This statement is generally in conformity with our holding in Southwest Cotton Co. v. Ryan, 22 Ariz. 520, 199 P. 124, wherein it was held that it was the duty of the trial court to charge on all vital issues made by the pleadings and contested in the evidence although not requested by either party to do

so. In the later case of Southwest Cotton Co. v. Clements, 25 Ariz. 124, 213 P. 1005, 1010, the holding of Southwest Cotton Co. v. Ryan, supra, was modified by stating " * * * In the Ryan Case no instruction on the measure of damages was requested by either of the parties litigant, and none was given by the court. We there held that such a vital question as the measure of damages for personal injury should have been, even in the absence of request, explained to the jury by the court on its own motion, and that a total failure to declare the law on the measure of damages in such case was error. We did not hold, nor did we intend to hold by the language employed, that it was the duty of the court on its own motion to take notice of all questions directly or collaterally involved and to instruct the jury thereon. * * * "

The Ryan and Clements cases were again re-examined in Kinman v. Grousky, 46 Ariz. 191, 49 P.2d 624, and the modification set forth in the Clements case was re-approved. The reasons set forth in this Kinman case for the modification of the rule in the Ryan case, we believe, are persuasive and entirely applicable under our new rules of procedure. Insofar as the statement quoted above from the case of Reah v. Jupin is in conflict with our pronouncement in Southwest Cotton Co. v. Clements, supra, and Kinman v. Grousky, supra, the same is overruled.

In construing Rule 51, Sec. 21–1019, supra, we have held that instructions

which are not objected to at trial could not be assigned as error under the new rules of procedure. Burton v. Valentine, 60 Ariz. 518, 141 P.2d 847; Kauffroath v. Wilbur, 66 Ariz. 152, 185 P.2d 522; Valley Transportation System v. Reinartz, 67 Ariz. 380, 197 P.2d 269. At this time defendants cannot be heard to complain of the instruction relating to the good faith of the defendants and now assigned as error, even though this instruction is somewhat confusing and misstating the law in that it precluded plaintiff from recovering if the jury should find that the defendants proceeded "in good faith and without negligence on their part" in their statements and claims made to Mr. Clem, without legal justification.

On such a vital question as the measure of damages in a case where damages are at issue, it is obligatory upon the trial court, on its own motion, to instruct thereon, and the failure to declare the law on the measure of damages would constitute fundamental and reversible error. Southwest Cotton Co. v. Ryan, supra. In the instant case, the court did fairly instruct on the measure of damages.

The assignments being without merit and no fundamental error appearing in the record, the judgment should be affirmed, and it is so ordered.

UDALL, C. J., and STANFORD, PHELPS and DE CONCINI, JJ., concur.