563 P.2d 287

Don CHANAY and Kathleen Chanay, his wife, Appellants,

v.

George A. CHITTENDEN and Frances Chittenden, his wife, Anita Blanchard, a single woman, and Union Mutual Life Insurance Company, a Foreign Corporation doing business in Arizona, Appellees.

No. 12667.

Supreme Court of Arizona, In Division.

April 13, 1977.

Finn, Finn & Finn, by Ruth G. Finn and Elizabeth R. Finn, Phoenix, for appellants.

Lewis & Roca by John P. Frank and Thomas C. Horne, Phoenix, for appellees.

HAYS, Justice.

This is an appeal from an order granting the appellees' motion for summary judgment. We have jurisdiction pursuant to 17A A.R.S. Supreme Court Rules, rule 47(e)(5). The pertinent facts are as follows.

Appellant Don Chanay filed a complaint claiming four causes of action against appellees, Union Mutual Life Insurance Co. (hereinafter referred to as Union Mutual) and George Chittenden (hereinafter referred to as Chittenden). Chittenden previously had been a vice-president of Union Mutual and was, at the time the action was filed, a general agent for Union Mutual in Arizona. A third defendant was named in the complaint but was never served. That was Anita Blanchard, appellant's one-time personal secretary.

After the answer was filed, depositions were taken from appellant and Chittenden.

Without further discovery, except some interrogatories served on the appellees, a motion for summary judgment was made by the appellees. It was denied. On a motion for reconsideration, the same trial judge again denied summary judgment. Two months later, the action having been transferred to a new trial judge, another motion for reconsideration was made. Although no further discovery or affidavits were filed, the second judge granted summary judgment on all four counts.

■ (We wish to say at this juncture, we do not approve of the practice of a trial judge redeciding such a motion when no new discovery has taken place).

Upon appellant's motion for a new trial and to amend the judgment, the trial court reversed itself as to the fourth cause of action, and a modified judgment was filed. We are only concerned in this appeal, therefore, with the three causes of action in which summary judgment was granted.

The first cause speaks in terms of breach of contract by Union Mutual. The second cause alleges interference with appellant's contract and business relations with Union Mutual by Chittenden. The third cause asserts that both appellees and Anita Blanchard misappropriated and used to appellant's detriment "trade secrets, personal contacts and confidential information" gained by Blanchard in her position as appellant's confidential secretary for ten years.

After careful review of all the pleadings, depositions, motions and supporting affidavits submitted on appeal in this case, we are of the opinion that the trial court was correct in granting summary judgment on the contract cause of action, but incorrect in doing so on the second and third causes.

## BREACH OF CONTRACT

In November, 1968, appellant entered into a written agreement with Union Mutual entitled "MAP Special Agent Agreement." This contract made him a "non-exclusive" agent, entitling him to overrides on any business produced by him in Arizona. He apparently also had a broker's contract

with Union Mutual, which is not in the record before us. In any event, under these contracts he was able to sell Union Mutual insurance policies directly to individuals as a broker and receive a commission, or to other brokers and receive override compensation on the Union Mutual policies they sold.

Appellant specialized in health and disability insurances and testified at his deposition that Union Mutual policies in those fields were probably the best available. However, appellant continued to maintain his licenses to sell for a number of other large insurance companies, and, as we pointed out, his contract with Union Mutual was "non-exclusive"; that is, he was not an agent for Union Mutual alone. The "MAP" contract additionally declared him an independent contractor.

Termination of this contract by the parties could be achieved at the will of either of the parties upon fifteen days written notice to the other, or for cause, by either, without notice. Addendums to this contract, the last of which is the only one in the record before us and is dated October, 1971, were incorporated by reference into the basic agreement. They merely changed appellant's expense allowance schedule. The addendum before us contains a sentence referring to the basic agreement and the termination clause thereof. Appellant admitted at his deposition that he read and understood all of these agreements which he signed. He was terminated in December, 1972, upon fifteen days notice.

Despite the express contract, appellant urges that Union Mutual, through Chittenden and other of its officers, created some kind of equitable contract with appellant by continuously assuring him that his position with Union Mutual as their only agent in Arizona would be secure as long as he did a good job for the company. He complains, in effect, that he was urged to act as an exclusive agent and he did so (although maintaining the right to sell policies of other insurance companies if he so chose), in reliance on these assurances, but was terminated anyway, in bad faith. Appellant relies heavily on the Restatement of Contracts § 90. We do not think that section assists him in light of his testimony at the deposition:

Q. My question to you was: Did you retain the right at all times for you to terminate the contract without cause and say you will not do any further work for this company?

A. Did I give up that right?

Q. Yes.

A. No.

Q. And you kept that right to quit this company any time you chose to?

A. Yes.

Q. And did they keep their contract right to quit you any time they chose to?

A. Yes.

■ There can be no implied contract where there is an express contract between the parties in reference to the same subject matter. *Ewing v. Sargent,* 87 Nev. 74, 482 P.2d 819 (1971); *Fox v. Cities Service Oil Co.,* 201 Okl. 17, 200 P.2d 398 (1948); *Wilson v. Frederick R. Ross Inv. Co.,* 116 Colo. 249, 180 P.2d 226 (1947); *Keith v. Kottas,* 119 Mont. 98, 172 P.2d 306 (1946); *Chandler v. Washington Toll Bridge Authority,* 17 Wash.2d 591, 137 P.2d 97 (1943); 17 Am. Jur.2d *Contracts* § 3.

■ Although appellant may have been able to prove an implied agreement not to terminate at will under some equitable theory, he could only have done so if there were no express agreement to the contrary. By his own admission, there was no issue to try, and therefore the granting of a summary judgment on this nonexistent cause of action was proper. 16 A.R.S. Rules of Civil Procedure, rule 56(c). Appellant could not raise a genuine issue by merely asserting the contrary in his affidavits. "The general allegation under oath must give way as against . . . [his] . . . own deposition . . . .." *Stevens v. Anderson,* 75 Ariz. 331, 334, 256 P.2d 712, 714 (1953).

There was no error in granting the summary judgment as to the cause of action alleging a breach of contract.

## INTERFERENCE WITH CONTRACT RELATIONS

For his second cause of action, appellant alleged that Chittenden "contrived to use his position with the Company to induce the Company to sever its contract with" appellant, in order that Chittenden might come to Arizona and "take over" appellant's Union Mutual business. Appellant alleges this was done with "malicious motive," and that appellant has been damaged. In his brief, in support thereof, appellant relies on the Restatement of Torts § 766:

> ". . . [O]ne who, without privilege to do so, induces or otherwise purposely causes a third person not to
>
> (a) perform a contract with another, or
> (b) enter into or continue a business relation with another
>
> is liable to the other for the harm caused thereby."

■ The requisites for this commercial tort were set out by Professor Prosser in his *Law of Torts,* Interference with Contractual Relations § 129 (4th Ed. 1971). The interference must be intentional, not negligent; there must be an absence of a justifiable purpose; there must be actual damages. Arizona law agrees. *Tipton v. Burson,* 73 Ariz. 144, 238 P.2d 1098 (1951); *Meason v. Ralston Purina Co.,* 56 Ariz. 291, 107 P.2d 224 (1940).

The privileges which may justify an interference are set out in §§ 767 through 774 of the Restatement of Torts.

Appellee Chittenden urged successfully below that there was no genuine issue as to any material fact in this cause of action. He urges us to agree with the ruling below on the matter by arguing first that his affidavit in support of the motion for summary judgment is uncontested. In that affidavit, Chittenden avowed that his decision to move to Phoenix was made before Union Mutual's decision with respect to the Arizona agency, and was motivated by his wife's

health. He also asserts therein that the decision to terminate appellant's contract was made by officers other than himself, and that he did not use any improper means with these officers.

Like appellant, however, appellee cannot escape his own admissions at the deposition:

Q. Who made the decision to have a general agency in Arizona?

A. Who made the decision?

Q. Who in the company participated in the decision?

A. Al Perkins, executive vice president.

Q. Who else?

A. That's the only one I know of.

Q. Did you participate in that decision?

A. Did I participate in it?

Q. . . . [W]ere you consulted in making the decision?

A. Well, I didn't have any power. . .

Q. Did Mr. Perkins talk to you about it?

A. Yes.

. . . . .

Q. When did you first become personally interested in the general agency in Arizona?

A. In November, December of '71.

Q. And how did the decision of a general agency in Arizona first start?

A. Well . . . in the upper chambers. But with me, I just said that I was going to go to Phoenix. . .

Q. When did you make that decision?

A. Probably when I was seven or eight years old, I decided I was going to move to the warm country. As far as specifically coming to Phoenix right at that time, November or December of '71.

Coincidentally, it was at this very time—November of December of 1971—that the decision to form a general agency in Arizona was made by Union Mutual. This information comes to us also from Chittenden's deposition.

We think the statements made by Chittenden at the deposition do raise some very

genuine issues of material fact with regard to contractual interference. He admits that, although the final decision was not his, he discussed the issue with the man who made the decision, and that he very coincidentally decided to come to Arizona at the same time the decision to open a general agency here was being made. Additionally, on file in the action, were answers to interrogatories propounded to Union Mutual. Therein stated was the fact that Chittenden definitely took part in discussions regarding the opening of a general agency in Arizona.

■ Pursuant to 16 A.R.S. Rules of Civil Procedure, rule 56(c), the trial court must consider all the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits before making his decision on a summary judgment. The entire record must be examined. *Krumtum v. Burton,* 111 Ariz. 448, 532 P.2d 510 (1975); *Stevens v. Anderson, supra.*

■ In determining the propriety of granting summary judgment, the evidence and inferences must be viewed in a light most favorable to the party opposing the motion. *Pace v. Sagebrush Sales Co.,* 114 Ariz. 271, 560 P.2d 789 (1977). We think there is a sufficient amount of evidence, although minimal, from the appellees' depositions and interrogatories, to raise a material factual issue and preclude summary judgment. *Gibbons v. Globe Development, Nevada, Inc.,* 113 Ariz. 324, 553 P.2d 1198 (1976).

Appellee argues further, however, that even giving full effect to appellant's complaint and affidavits, there is still no tortious interference. He says that one "acting out of economic motives" is privileged to interfere with another's contract or business relations, and cites Restatement of Torts, § 768, comment (h), in support thereof.

The citation of that section and comment is misleading. That section deals with the privileges of a competitor. Chittenden was not a competitor when the alleged interference took place. He could not become a "competitor" of appellant until after appellant's contract was terminated and Chittenden came to Arizona to begin selling insurance himself. At the time of the alleged interference, Chittenden was still an officer of the company.

■ Even if that section did apply, Arizona does not give a free hand to businessmen to interfere with established contracts of their competitors with others.*

"One who maliciously induces another to breach a contract with a third person . . . is liable to such third person for the damages resulting . . . ." *Tipton v. Burson,* 73 Ariz. 144, 148, 238 P.2d 1098, 1100.

The "malice" referred to above

". . . does not necessarily imply spite or ill will but malice in its legal sense and by this is meant 'the intentional doing of a wrongful act without justification or excuse. [cites omitted].' " *Meason v. Ralston Purina Co.,* 56 Ariz. 291, 300, 107 P.2d 224, 228.

If the act is also malicious in fact, punitive damages can be recovered as well. *McNutt Oil & Refining Co. v. D'Ascoli,* 79 Ariz. 28, 281 P.2d 966 (1955).

■ Chittenden may well be able to show some privilege, if an interference is proved, under other pertinent sections of the Restatement. The burden, however, to prove such a privilege is on him. *Herron v. State Farm Mutual Ins. Co.,* 56 Cal.2d 202, 14 Cal.Rptr. 294, 363 P.2d 310 (1961); Harper and James, *The Law of Torts,* Vol. 1, § 6.12. Unless, as a matter of law, it appears to the trial court that the defendant

---

* Appellees argued also that because there was an "at will" termination clause, the appellant had no right to expect the contract relationship to continue. The majority of jurisdictions hold that interference with contracts terminable at will is actionable. Prosser, *Law of Torts,* Interference with Contractual Relations, § 129 (4th Ed. 1971); *Speegle v. Board of Fire Underwriters,* 29 Cal.2d 34, 172 P.2d 867 (1946). The rationale is that, until it's terminated, the contract is a subsisting relation, of value to the parties and presumably to continue in effect. Prosser, *Law of Torts,* supra.

**38**

has a privilege to interfere with another's contract relations, that is an issue best left to the trier of fact. *Ulan v. Lucas & Arizona Board of Regents*, 18 Ariz.App. 129, 500 P.2d 914 (1972); *Si Collins v. Vickter Manor*, 47 Cal.2d 875, 306 P.2d 783 (1957); *Herron v. State Farm, supra.*

If the papers of the moving party fail to show he is entitled to judgment as a matter of law, the opposing party need not even file an opposing affidavit. *Lujan v. MacMurtrie*, 94 Ariz. 273, 383 P.2d 187 (1963). Appellee Chittenden's assertions amounted to nothing more than unsubstantiated denials of appellant's complaint and opposing affidavit. That, in and of itself, raises a genuine issue of material fact; the burden of showing no genuine issue of material fact exists, regardless of who has the burden of proof on the issue at trial, rests with the party seeking summary judgment. *Elerick v. Rocklin*, 102 Ariz. 78, 425 P.2d 103 (1967); *City of Phoenix v. Space Data Corp.*, 111 Ariz. 528, 534 P.2d 428 (1975).

The granting of summary judgment on this issue was error.

## TRADE SECRETS AND CONFIDENTIAL INFORMATION

Appellees were equally successful in obtaining a summary judgment on the issue of whether they had stolen trade secrets from appellant by hiring Anita Blanchard and using what information she had learned in ten years as appellant's personal, confidential secretary.

In their brief, appellees argue, first, that any "trade secrets" appellant may have had belonged to Union Mutual, as appellant's principal, anyway. Secondly, they argue, even if the "trade secrets" did not already belong to Union Mutual, they weren't stolen.

In his affidavit supporting the motion for summary judgment, Chittenden swears that the only information given him by Anita Blanchard was a list of names and addresses readily obtainable from Union Mutual's home office files and also from public sources.

Appellees ignore, however, appellant's allegations in his complaint, affidavit and in testimony at his deposition that Blanchard had been obtaining certain confidential business information from him for over ten years, at least six years before appellant ever began selling Union Mutual insurance policies, that there was a great deal more confidential information involved than a mere list of names and addresses and that the secretary was induced away from appellant's employ for the very purpose of obtaining that information.

Appellees also ignore the inferences to be drawn from testimony of Chittenden at the deposition, wherein he admitted getting to know Blanchard on visits to Phoenix, having · knowledge of her close contacts with brokers in the area (made through her position with appellant), having personal correspondence and conversations with her regarding the leaving of appellant's employ before she had left, that during the first six months of Chittenden's business in Phoenix, Blanchard had personal contact with the brokers she'd developed business relationships with while in appellant's employ, that one quarter to one-third of Chittenden's override business came from Phoenix brokers, all of whom had had contact with Blanchard during the time she was appellant's secretary. Further, Chittenden conveniently failed to answer certain non-uniform interrogatories propounded to him regarding Anita Blanchard. Finally, his affidavit simply denies any confidential information was given him.

The elements for this unfair trade practice are outlined in § 757 of the Restatement of Torts, "Liability for Disclosure or Use of Another's Trade Secret" and in § 759, "Procuring Information By Improper Means." The actual theft of a trade secret or confidential business information is just one of the many improper means by which the disclosure, use, or procurement might take place. Therefore, appellees' second argument that the information wasn't stolen does not wash.

Chittenden was, at all pertinent times either an officer or exclusive agent of Un-

ion Mutual. Therefore, Union Mutual can be equally liable for Chittenden's torts, if they are committed in the course of his employment. *See* Restatement of Agency (Second) §§ 219 and 231. We agree that there can be no unfair disclosure, use or procurement of any information Union Mutual already may have had from appellant, but appellant's allegations are far broader than that. He, unlike Chittenden, was a non-exclusive agent, servicing many different insurance companies—competitors of Union Mutual—and may very well have had some valuable information with regard to his business with them that Union Mutual, through Chittenden, would like to have had.

There are many factors to be considered in proving this commercial tort. *See* Restatement of Torts, § 757, comment (b). Appellant does not have to allege them, however, just to get into court. 16 A.R.S. Rules of Civil Procedure, rule 8(a)(2). Appellant did sufficiently allege unfair conduct on the part of the appellees in obtaining his personal secretary of ten years standing, and the information she had about appellant's business. In essence, all the appellees did was deny those allegations. Neither party deposed Anita Blanchard. There was no other discovery aside from the depositions and a few interrogatories. Other than the bare assertions of both parties, there is no further evidence. However, the issues remain: Did the appellees, in fact, unfairly induce Blanchard away in order to obtain appellant's confidential business information, and did they then use that information to appellant's detriment?

Summary judgment is not designed to resolve factual issues, but to ascertain whether such issues exist. *Yavapai Co. v. Wilkinson,* 111 Ariz. 530, 534 P.2d 735 (1975); *City of Phoenix v. Space Data Corp., supra.* We hold that it was error to grant summary judgment on this third cause of action.

Appellant may have a difficult time proving all he has alleged. There are many, many cases in these areas of unfair trade practices, cited by both the appellees and appellant, and which we discovered in our research. *See,* for example, *Continental Car-Na-Var Corp. v. Moseley,* 24 Cal.2d 104, 148 P.2d 9 (1944); *George v. Burdusis,* 21 Cal.2d 153, 130 P.2d 399 (1942); *Imperial Ice Co. v. Rossier,* 18 Cal.2d 33, 112 P.2d 631 (1941), in addition to cases and other sources already cited herein. We refer here, however, to a very pertinent quote of our own:

> "The parties have cited many cases with regard to the liability or non-liability of the various defendants . . . . In our view, the applicability of these cases requires that the facts to which they apply first be determined. Upon such determination, the trial court can apply the law and decide whether to instruct the jury or direct a verdict." *Boozer v. Arizona Country Club,* 102 Ariz. 544, 550, 434 P.2d 630, 636 (1967).

Upon review of the entire record, we find there are some material, disputed questions of fact which, if resolved against appellees, could adversely affect final judgment. *Pace v. Sagebrush Sales Co., supra.*

Reversed and remanded to the trial court for further proceedings not inconsistent with this opinion.

CAMERON, C. J., and GORDON, J., concurring.