763 P.2d 545

**BAR J BAR CATTLE COMPANY, INC., an Arizona corporation, Plaintiff-Appellant, Cross Appellee,**

v.

**Malcolm PACE and Jane Doe Pace, husband and wife, Defendants-Appellees, Cross Appellants.**

**No. 1 CA-CIV 9710.**

Court of Appeals of Arizona, Division 1, Department D.

Oct. 20, 1988.

## OPINION

CHARLES E. ARES, Judge Pro Tem.*

We are asked to decide whether a purchaser who persuaded an owner to sell him property, on which there was a grazing lease terminable upon sale, unlawfully interfered with the contractual rights of the lessee of that property. The trial court determined, on summary judgment, that there was no evidence that the purchaser had acted wrongfully and granted him judgment. We affirm.

### I.

Bar J Bar Cattle Company, Inc., owned by the Flake family, operates a ranch in northern Arizona comprising both patented and leased land. On the eastern edge of the ranch, Bar J Bar had for many years leased Section 17 from New Mexico and Arizona Land Company (New Mexico). Silver Creek flows through the east half of Section 17, providing "live water" to Bar J Bar's cattle grazing in that part of the ranch. Because of high bluffs along much of its length, Silver Creek is accessible to cattle only at a point in the east half of Section 17 where Six Mile Trail crosses the creek.

In 1976, New Mexico notified all its lessees that it intended to sell as much of its Arizona land as possible. The letter advised that "[r]equests to purchase made by current lessees will be given first consideration, but this is no assurance of, nor does it imply a right of first refusal."

Bar J Bar's lease from New Mexico, renewed in 1980, reserved to the lessor the right to sell the land and cancel the lease on 30 days notice.

Malcolm Pace, who occupies an adjoining ranch to the east, had some years ago sought unsuccessfully to sublease Section 17 from Bar J Bar. In 1982, he began negotiating with Elizabeth Bedewi, vice president of New Mexico, to purchase the east half of Section 17. Upon signing the contract of sale, New Mexico gave notice of

---

* Charles E. Ares was authorized to participate in this case by the Chief Justice of the Arizona Supreme Court pursuant to Ariz. Const. art. VI, § 3 and A.R.S. §§ 12–145 to –147.

cancellation of the lease to Bar J Bar. Rolf Flake, Bar J Bar's president, immediately protested that as the lessee, Bar J Bar had an implied right of first refusal.

When New Mexico rejected this claim, Bar J Bar sued New Mexico and Pace, alleging that Pace had fraudulently induced the sale and that New Mexico had breached the lease.

On summary judgment, the trial court held that no right of first refusal was implied in the lease. It also found no evidence that Pace had acted improperly to cause a breach of the lease or wrongfully interfered with Bar J Bar's business relationships. The court reserved for trial only Bar J Bar's claim that New Mexico had breached its covenant of good faith and fair dealing.

The trial court entered judgment in favor of Pace pursuant to rule 54(b), Arizona Rules of Civil Procedure, and Bar J Bar appeals from that judgment. Pace cross-appeals, claiming that the trial court erred in denying his application for attorney's fees under A.R.S. § 12–341.01.

## II.

The question presented on this appeal is whether there was a genuine issue of fact as to whether Pace acted improperly in persuading New Mexico to sell him part of Section 17. On review of the granting of summary judgment, we must take the evidence and all reasonable inferences in the light most favorable to the party against whom the judgment was entered. We may sustain the decision below only if there are no genuine issues of relevant fact and under the law the moving party was entitled to judgment. *Antwerp Diamond Exch. v. Better Business Bureau*, 130 Ariz. 523, 527, 637 P.2d 733, 737 (1981).

█ The elements of the tort of intentional interference with contract are settled in Arizona. They are: (1) the existence of a valid contractual relationship; (2) knowledge of the relationship on the part of the interferor; (3) intentional interference inducing or causing a breach; (4) resultant damage to the party whose relationship has

been disrupted; and (5) improper action on the part of the defendant. *Snow v. Western Sav. & Loan Ass'n*, 152 Ariz. 27, 34, 730 P.2d 204, 211 (1987); *Wagenseller v. Scottsdale Mem. Hosp.*, 147 Ariz. 370, 386–88, 710 P.2d 1025, 1041–43 (1985).

The evidence before the trial court established without doubt the existence of four of these five elements. Pace, knowing that Bar J Bar was the lessee of the property, successfully negotiated to buy the property and thereby caused New Mexico to exercise its right to cancel the lease. The cancellation clearly damaged Bar J Bar's interest.

While the formulation of the test set out in *Wagenseller* speaks of a breach of contract, the weight of authority holds that it is a tort to *improperly* cause the cancellation, rather than a breach, of a terminable contract. *Prosser & Keeton, Torts* § 129 at 988 nn. 99, 1 (5th ed. 1984); *Restatement (Second) of Torts* § 766 comment g (1977). As the United States Supreme Court once noted, a contract that is at the will of one of the parties is not necessarily terminable at the will of a third person. *Truax v. Raich*, 239 U.S. 33, 38, 36 S.Ct. 7, 9, 60 L.Ed. 131 (1915). *Wagenseller* stated as much, though that case itself involved a breach of an at-will employment contract. 147 Ariz. at 386, 710 P.2d at 1041. Wrongful interference rests on improper conduct by the defendant, a stranger to the contract, not on whether a breach followed. That no breach of contract occurred should give us pause in determining whether defendant's conduct was wrongful, but it does not preclude liability if he otherwise caused harm.

The somewhat amorphous standard of liability in these cases, *improper* action on the part of the defendant, must be applied with discrimination, particularly where the conduct in question takes place in the context of competitive business activities. The need for caution is doubly required where the effect of the actor's interference is only to cause the cancellation of a terminable contract. In the case before us, two ranchers sought control, either by lease or purchase, of grazing land through which life-giving water flows. Nothing in the evi-

dence suggests that Pace had any reason to believe that he was persuading New Mexico to violate Bar J Bar's rights by breaching the lease.[1] Under circumstances like these, courts must take care that in their desire to protect the reasonable expectations of parties to contracts, they do not impose undesirable restrictions on freedom of competition. *See generally,* Dobbs, *Tortious Interference With Contractual Relationships,* 34 Ark.L.Rev. 335, 344–63 (1980); *Restatement (Second) of Torts* § 768 comment b (1977).

■ In *Wagenseller,* the supreme court adopted the seven factors enumerated in *Restatement (Second) of Torts* § 767 as the elements to be considered in determining whether a defendant's interfering conduct was improper. 147 Ariz. at 388, 710 P.2d at 1043. Under this standard, the court should consider: (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference, and (g) the relations between the parties. Pace's conduct must be assessed in light of those factors.[2]

■ *Nature of Pace's Conduct.* To survive summary judgment, Bar J Bar had to offer evidence that Pace acted illegally or inequitably, as for example, committing fraud, duress or abusing economic power. *See generally,* Dobbs at 365–72. Arizona courts have also found unlawful interference where the defendant secured the discharge of an employee who refused to act in an arguably criminal way, *Wagenseller,* 147 Ariz. at 381, 710 P.2d at 1036; or wrongfully claimed the right to control water rights leased by the plaintiff to a third party, *Tipton v. Burson,* 73 Ariz. 144, 238 P.2d 1098 (1951); or where a mortgagee claimed in bad faith the right to enforce a due-on-sale clause, *Snow v. Western Sav. & Loan Ass'n,* 152 Ariz. 27, 730 P.2d 204 (1987). Bar J Bar alleged that when Pace approached Bedewi about the purchase of Section 17, he misled her into believing that he was the lessee and presumably was to be given first consideration in the sale of the property. But both Bedewi and Pace testified on deposition that the identity of the lessee was never mentioned in their conversations, and it is clear beyond any doubt that Pace never misrepresented that he was the lessee. The most that plaintiff could point to on summary judgment was the testimony of Rolf Flake, president of Bar J Bar, that when he spoke to Bedewi after learning of the sale, she said that she had mistakenly thought that Pace was the lessee. There is no evidence at all that Pace said or did anything to induce such a mistaken belief, which in any event, Ms. Bedewi denied entertaining. Plaintiff now argues that Pace misled Bedewi by his silence. There is no evidence that Bedewi acted on a unilateral mistake; nor is there any showing that Pace had such knowledge of a mistake that he had a duty to correct it. *See Isaak v. Massachusetts Indem. Life Ins. Co.,* 127 Ariz. 581, 584, 623 P.2d 11, 14 (1981); *Restatement (Second) of Contracts* § 161 comment d (1979). In any event, Bedewi testified on deposition that the identity of the lessee was immaterial to her and that, had she adverted to the fact that Pace was not the lessee, she would not

---

1. The trial court found that New Mexico's sale of the east half of Section 17 might constitute a breach of its covenant of good faith and fair dealing, because the loss of access to water arguably diminished the value of the rest of Bar J Bar's lease. The court held that a competitor should not be at risk to avoid interfering with unknown covenants of fair dealing between the parties to the contract. Appellant does not pursue this issue on appeal. We are advised that the claim that New Mexico had breached a covenant of good faith and fair dealing, reserved for trial, *supra,* at 483, 763 P.2d at 547, has been dismissed without trial. Appellee's brief, page 2.

2. We are aware that the balancing process required by § 767 will, in some cases, present troublesome problems of predictability, and may make ascertaining a standard for future conduct difficult. *See Top Serv. Body Shop, Inc. v. Allstate Ins. Co.,* 283 Or. 201, 210 n. 12, 582 P.2d 1365, 1371 n. 12 (1978). In view of our conclusion, we need not face those problems in this case.

have acted differently. We conclude that there was no evidence that Pace's conduct in offering to purchase the property was improper.

*Pace's Motive.* Bar J Bar argues that Pace had an improper motive in that he was acting out of ill will toward Bar J Bar because it had earlier declined to sublease the property to him.

■ We reject the argument for two reasons. First, to attribute a motive of revenge or spite on this slim footing requires utter speculation. The most that one could conclude from these facts is that Pace continued to want the property. Second, even if Pace had an improper motive, that fact would not necessarily make him liable in tort. One who interferes with the contractual rights of another for a legitimate competitive reason does not become a tort-feasor simply because he may also bear ill will toward his competitor. *Ulan v. Lucas*, 18 Ariz.App. 129, 500 P.2d 914 (1972); *Prosser & Keeton* § 129 at 984 (5th ed. 1984); Dobbs at 347–50. *Restatement (Second) of Torts* § 768(1)(d) adopts the rule that a competitor does not act improperly if his purpose at least in part is to advance his own economic interests. *See* comment g. *Cf. Alyeska Pipeline Serv. Co. v. Aurora Air Service*, 604 P.2d 1090 (Alaska 1979).

*Interests of the Parties.* Relying on the supreme court's adoption of the factors in § 767 of the *Restatement (Second) of Torts*, Bar J Bar argues that its interest in retaining access to Silver Creek far outweighs Pace's interest in acquiring more land and water. Essentially it argues that Pace doesn't really need the water because he already has ample windmills and stock tanks.

We do not believe that in this case the court was required to balance the interests of the parties in this way. Section 767 lists several factors a court should take into account when determining whether a defendant has acted improperly. To make the entire decision turn simply on the weight of one party's interest as compared to the other's would be to ignore all the other elements of the calculus. Moreover, in this case the interests of both parties are legitimate and substantial. Bar J Bar had access to Silver Creek for years and wanted to keep it. Pace sought to add part of Section 17 to his own ranch as a buffer against unwanted development and as a source of flowing water. Under these circumstances, to attempt to weigh these interests against each other would involve the court in a risky and perhaps impossible task. We find nothing in this case that would justify preferring one party's interest over the other's. Conceivably, in a case in which the interfering party's interest is vastly inferior to that of the injured party, a court might well infer that the interfering party had acted with some improper motive, rather than with the intent to protect a legitimate interest. Such an inference, particularly if accompanied by evidence of improper conduct or objective, might well support a finding of liability. This is quite clearly not such a case.

*The Social Interests At Stake.* The tort of unlawful interference with contract operates as a restraint on competition and freedom of contract. In this case, because it is asserted with respect to a contract to sell land, its effect would be to impose a restraint on New Mexico's right to sell its land as it chose and on Pace's right to pursue his economic interests as he viewed them. Bar J Bar could have bargained and paid for a right of first refusal. Perhaps society's interests would have been served if it had done so, but it didn't. In the absence of evidence that Pace acted with an improper motive or employed improper means, the trial court properly granted summary judgment.

### III.

Pace has cross-appealed from the trial court's denial of his request for attorney's fees pursuant to A.R.S. § 12–341.01. The trial court assumed that it had discretion to award fees and exercised that discretion to deny the application.

Attorney's fees may be awarded in any contested action "arising out of a contract." It is apparent from the statutory language that the legislature intended to

alter the so-called American rule only in those cases in which a contractual relationship is integral to the successful party's claim or defense. In *Sparks v. Republic Nat'l Life Ins. Co.*, 132 Ariz. 529, 647 P.2d 1127 (1982), our supreme court held that fees may be awarded under the statute where a single act constitutes both a tort and a breach of contract, "as long as the cause of action in tort could not exist *but for* the breach of contract." *Id.* at 543, 647 P.2d at 1141 (emphasis in original). But where the claim at issue arises out of the breach of a duty imposed by law rather than a contract between the parties, fees may not be awarded. *Barmat v. John and Jane Doe Partners A–D*, 155 Ariz. 519, 747 P.2d 1218 (1987). Thus, in *Morris v. Achen Constr. Co.*, 155 Ariz. 512, 747 P.2d 1211 (1987), the supreme court held that attorney's fees could not be awarded in an action alleging that the defendant fraudulently induced the plaintiff to enter into a contract with a third person. The duty not to commit fraud arises not from any contractual relationship but is imposed by law. It existed in *Morris* even though there was no contractual relationship between the parties to that case at all.

 Similarly, in the case before us there was no contractual relationship between Bar J Bar and Pace. The duty not to interfere with the contract of another arises out of law, not contract. In fact, the tort may be committed even where the plaintiff has no contractual rights but simply the prospect of a contractual relationship. *Restatement (Second) of Torts* § 766B comment c.

The trial court relied on *Marcus v. Fox*, 150 Ariz. 333, 723 P.2d 682 (1986), in concluding that it "may" have had discretion to award fees. That reliance was misplaced. *Marcus* involved a suit between parties to a contract for rescission and damages on the ground that the contract had been fraudulently induced. There the requisite *Sparks* causal link between the claim and the underlying contract existed. In the case before us it is absent, and the trial court had no power to award attorney's fees under A.R.S. § 12–341.01(A).

Even were we to hold that the trial court had discretion to award fees in this case, we would affirm its exercise of that discretion. Though the trial court announced its reasons for denying fees in very general terms, *cf. Associated Indem. Corp. v. Warner*, 143 Ariz. 567, 571, 694 P.2d 1181, 1185 (1985), the appellee makes no convincing showing that the court abused its discretion. We affirm the denial of attorney's fees in the trial court and decline to award fees on appeal.

The judgment of the trial court is affirmed.

FIDEL, P.J., and KLEINSCHMIDT, J., concur.