Sharon Diane GOODMAN, a
single woman, Plaintiff,

v.

BROWN & WILLIAMSON TOBACCO
CORP., a Delaware corporation,
Defendant.

No. 92–1570 CIV PHX RCB.

United States District Court,
D. Arizona.

Dec. 7, 1993.

James W. Hill, David W. Hume, Phoenix,
AZ, for plaintiff.

Edward J. Walsh, William P. Allen, Snell
& Wilmer, Phoenix, AZ, for defendant.

## ORDER

BROOMFIELD, Chief Judge.

Pursuant to Rule 56, Fed.R.Civ.P., defendant Brown & Williamson Tobacco Corporation ("B & W") moves for summary judgment on Count I of plaintiff's Complaint, which alleges breach of an implied agreement to terminate only for "good cause."[1] The parties have fully briefed the matter, and the Court held a hearing on November 29, 1993. Having carefully considered the parties' arguments, the Court now rules.

---

1.  The Court previously dismissed Count II of the Complaint, which alleges tortious wrongful discharge, and Count III, which alleges tortious interference with a contractual relationship.

## I. BACKGROUND

In October, 1983 B & W hired plaintiff Sharon Diane Goodman ("Goodman") to work as a sales representative. In conjunction with her application for employment, Goodman signed an employment agreement (the "Agreement") which provides, in relevant part:

It is agreed and understood that by assigning me work, with such salary as may be incident thereto, that this application shall constitute the terms of the contract of employment and that the relation between me and the Corporation shall be a hiring at will terminable at any time by either of the parties thereto.

Def.'s Ex. A–2.

At the time of her hiring, plaintiff was provided with a Work Guidelines Manual (the "Manual") which contained a section entitled "Accuracy in Reporting." That section provided that:

Field Sales employees are the originators of numerous reports, records and correspondence representing claims for reimbursement of authorized expenditures on behalf of the Company, reports of activities performed and reports of time spent in the performance of these activities.

Any DELIBERATE misrepresentation of the use of Company funds or property, reporting of any activity not actually performed, failure to report activities actually performed or misrepresenting the time engaged in Company business is considered an act of dishonesty and constitutes cause for immediate termination of employment.

It is B & W's intent to enforce this policy uniformly throughout the organization.

Pl.'s Ex. B, 3–1 (emphasis in original). In November, 1987, B & W issued a revised Manual in which the Accuracy in Reporting section apparently no longer contained the "uniform enforcement" language appearing in the third paragraph quoted above.[2]

**2.** The Court was not provided with a copy of the revised Manual. However, both parties admit that the statement was not contained in the more recent Accuracy in Reporting section.

On June 2, 1989, B & W discharged Goodman for allegedly falsifying company reports.[3]

## II. DISCUSSION

### A. Summary Judgment Standard

■ To grant summary judgment, the court must hold that the record clearly establishes that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). When determining whether to grant summary judgment, the facts and inferences from these facts must be viewed in the light most favorable to the nonmoving party, and the burden is placed on the moving party to establish both that there is no genuine issue of material law or fact and that it is entitled to judgment as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 577, 106 S.Ct. 1348, 1350, 89 L.Ed.2d 538 (1986). The moving party may discharge this burden by showing that there is an absence of evidence to support the nonmoving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The party opposing the motion for summary judgment cannot rest upon mere allegations or denials in the pleadings or papers, but instead must set forth specific facts demonstrating a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

■ The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *Anderson*, at 247–48, 106 S.Ct. at 2509–10. A material fact is any factual dispute that might affect the outcome of the case under the governing substantive law. *Id.* at 248, 106 S.Ct. at 2510. A factual dispute is genuine if the evidence is such that a reasonable jury could resolve the dispute in

**3.** Goodman apparently was accused of listing on her time report as "retail time" hours which should have been listed as "other time."

favor of the nonmoving party. *Id.* If the nonmoving party's evidence is merely colorable or is not significantly probative, a court may grant summary judgment. *See, e.g., California Architectural Build. Prods., Inc. v. Franciscan Ceramics,* 818 F.2d 1466, 1468 (9th Cir.1987), *cert. denied,* 484 U.S. 1006, 108 S.Ct. 698, 699, 98 L.Ed.2d 650 (1988).

## B. Analysis

B & W first argues that it could not have violated an implied agreement to terminate only for "good cause" because there was no such implied agreement. It contends that the Agreement unambiguously created an at-will employment arrangement that permitted termination without cause.

In her Response, Goodman contends that B & W "cannot through its actions and representations give the appearance of providing job security and then render them meaningless by resorting to the at-will defense." Evidence of these "actions and representations" include the "Accuracy in Reporting" section of the Manual as well as Goodman's affidavit testimony that:

> I was given assurances during the interview process by the interviewers that so long as I performed my duties and responsibilities as a sales representative, I could expect continued employment with Brown & Williamson. This was also the general message conveyed during the orientation week subsequent to my hiring.

Goodman further argues that she was unaware of the at-will clause because it was buried in fine print and that the meaning of the clause itself is ambiguous. She also contends that the removal of the uniform enforcement provision from the "Accuracy in Reporting" section of the Manual cannot be effective against her because she did not receive reasonable notice of the change.

In its Reply, B & W inveighs against Goodman's supposed reliance on the Manual, arguing that such reliance is misplaced in the face of an express agreement that Goodman's employment would be terminable at-will. B & W further contends that the fact that Goodman might have been unaware of the at-will clause does not render the clause unenforceable because a party who has sufficient opportunity to examine a contract cannot avoid it on the grounds that she did not read it.

B & W also argues that even if the express at-will Agreement did not exist, Goodman has failed to show that there was an implied agreement to terminate only for good cause. It asserts that her statement that she was given "assurances" regarding job security is too vague and conclusory to create a triable issue of fact. It further contends that the fact that the Manual advised employees that misrepresentations constitute cause for termination does not create a promise that good cause is required for termination.

In *Leikvold v. Valley View Community Hosp.,* 141 Ariz. 544, 688 P.2d 170 (1984), the Arizona Supreme Court announced that an employer's personnel manual can modify an employment-at-will relationship and become part of an employment contract. The court recognized that a personnel manual would not become part of an employment contract where, for example, the manual clearly and conspicuously informed employees that the manual was not part of their employment contract and that their jobs were terminable at-will. *Id.* 688 P.2d at 174. The court ruled, however, that "if an employer does choose to issue a policy statement, in a manual or otherwise, and by its language or by the employer's actions, encourages reliance thereon, the employer cannot be free to only selectively abide by it." *Id.*

In *Wagenseller v. Scottsdale Memorial Hosp.,* 147 Ariz. 370, 710 P.2d 1025 (1985), the court reiterated the general rule that employment contracts for indefinite terms are presumed to be at-will, but stated that under *Leikvold:*

> The right of discharge without cause is an implied contractual term which is said to exist in an at-will relationship when there are no factual indications to the contrary. The intent to create a different relationship, as well as the parameters of that relationship, are to be discerned from the totality of the parties' statements and actions regarding the employment relationship.

**508**

*Id.* 710 P.2d at 1038. The court further stated that whether an announced policy modifies an implied at-will provision of an employment contract depends upon several factors, including 1) the employee's reliance on an announced policy; 2) the employer's course of conduct and oral representations regarding the policy; and 3) the words of the policy itself. *Id.* The court added that the determination of whether the policy becomes part of the employment contract is generally one of fact unless reasonable persons could not differ in the inferences and conclusions they would draw from the announced policy. *Id.*

B & W correctly points out that neither *Leikvold* nor *Wagenseller* involved express at-will employment agreements. Rather, in both of those cases, there was no written employment agreement at all. Thus, the courts' analyses involved whether an *implied* at-will employment agreement could be superseded by contrary *express* provisions in employee manuals. *Leikvold,* 688 P.2d at 172–174; *Wagenseller,* 710 P.2d at 1036–1038.

B & W contends that *Leikvold* and *Wagenseller* are limited to situations where there is no express employment contract and cites *Chanay v. Chittenden,* 115 Ariz. 32, 563 P.2d 287 (1977) in support of its argument that an implied agreement cannot contradict the terms of an express agreement. In *Chanay,* a "non-exclusive agent" provided services to a company under a contract allowing termination of the contract to be achieved at the will of either party upon fifteen days written notice. *Id.* 563 P.2d at 290. After being discharged following the requisite fifteen days notice, the agent brought a breach of contract claim alleging that the company was bound by an "equitable contract" that had been created as a result of the company's officers continually assuring him that his position would be secure for as long as he did a good job. *Id.* The court stated, however, that there can be no implied contract when there is an express contract between the parties in reference to the same subject matter. *Id.* Accordingly, the court affirmed the dismissal of the claim because "[a]lthough appellant may have been able to prove an implied agreement not to terminate at will

under some equitable theory, he could have only done so if there were no express agreement to the contrary." *Id.*

The question of whether *Chanay* forecloses a *Leikvold/Wagenseller* inquiry into whether a personnel manual becomes part of an employment agreement when there is an express employment contract was addressed by the Arizona Court of Appeals in *Loffa v. Intel Corp.,* 153 Ariz. 539, 738 P.2d 1146 (App.1987). In *Loffa,* an employee of Intel signed an employment agreement which provided that "This Agreement ... does not in any way restrict my right or the right of INTEL to terminate my employment." (the "Intel provision") *Id.* 738 P.2d at 1148. The employee also received a document entitled "Non Exempt Discipline Policy" which announced a progressive disciplinary process which began with verbal warnings, advanced to written warnings, and then provided for termination with the approval of the department manager and a personnel administrator. *Id.* at 1149. The document also stated that "[i]n cases of severe misconduct, an employee can be terminated without warning." *Id.*

In rejecting Intel's argument that *Chanay* foreclosed consideration of whether the Discipline Policy was included in the employment contract, the court ruled that *"Leikvold* and *Wagenseller* require consideration of all the relevant circumstances, including the parties' representations and course of conduct, to ascertain the terms of the parties' agreement on how the employment relationship may be terminated; to the extent that *Chanay* rests on a notion that these representations and course of conduct cannot be so considered, *Leikvold* and *Wagenseller* discredit this reasoning." *Id.* at 1153 n. 3. The court further reasoned that:

> Although Intel may have put the label, "Employment Agreement," on one of its documents, the affixation of this label does not avoid the need for a factual determination of what are the terms of the parties' agreement based upon all of their statements, representations and course of performance.... If there is a factual dispute as to whether one statement has been sup-

plemented, modified, or contradicted by other actions of the parties, as was the case here, it is the jury's province to resolve it. Although the parties may have agreed tacitly or expressly that their relationship will have some of the characteristics of employment-at-will, the lesson of *Leikvold* and *Wagenseller* is that such an agreement is not inconsistent with a jury finding the parties also agreed to supplement or modify their employment contract in accordance with the employer's stated personnel policies and procedures.

*Id.* at 1150.

B & W argues that *Loffa* is distinguishable from this case because the Intel provision at issue in *Loffa* did not unambiguously create an employment at-will relationship. The Court agrees that this is a legally significant distinction. In *Reid v. Sears, Roebuck and Co.*, 790 F.2d 453 (6th Cir.1986), a case decided under Michigan law, the court ruled that there could not be an implied contract restricting an at-will employment relationship when there was an express contract stating that the relationship could be terminated at will. *Id.* at 461–62. The employment agreement in *Sears* (the "Sears provision") stated that, "In consideration of my employment, I agree … [that] my employment and compensation can be terminated with or without cause, and with or without notice, at any time, at the option of either the Company or myself." *Id.* at 456.

The *Loffa* court distinguished *Sears* based on the differences in the language of the Sears provision and the Intel provision. The court stated that while the Sears provision bluntly stated that the employer reserved the right to discharge without cause, the Intel provision ambiguously referred to "the right of INTEL to terminate my employment." 738 P.2d at 1152. Moreover, while "[t]he Sears provision governs the entire employment relationship, … the Intel [provision] may reasonably be read as having a narrower application because of the limited scope of the subjects referred to in the document and the express reference to '[t]his Agreement.'" *Id.*

■ In this case, the Agreement signed by Goodman stated that "the relation between me and the Corporation shall be a hiring at will terminable at any time by either of the parties thereto." As in *Sears*, and unlike in *Loffa*, this language expressly and unambiguously created a hiring at will. *See also, Comeaux v. Brown & Williamson Tobacco Co.*, 915 F.2d 1264 (9th Cir.1990) (identical employment agreement as at issue in this case found to create explicit terminable at will employment relationship under California law). Goodman's contention that the at-will clause was buried in fine print is not a reasonable argument given that the entire Agreement constituted six sentences and less than one half of one page. Similarly, while Goodman argues that the "awkward phrasing" of the clause "fails to meet the necessary requirements under Arizona law," she fails to adequately demonstrate that the phrase "shall be a hiring at will terminable at any time by either of the parties thereto" is in any way awkward or ambiguous. *See, Chandler Medical Bldg. Partners v. Chandler Dental Group*, 175 Ariz. 273, 276, 855 P.2d 787, 790 (App.1993) (controlling rule of contract interpretation requires that ordinary meaning of language be given to contract terms).

Moreover, while the *Loffa* court found that the Intel provision in *Loffa* may reasonably be read as referring solely to the subject matter of the document containing that provision and not to the entirety of the employment relationship, the same cannot be said in this case. The Agreement here specifically provides that "this application shall constitute the terms of the contract of employment." Again, this language clearly and unambiguously indicates that the Agreement was meant to cover the entire employment relationship. Any contrary construction would fail to give effect to the plain language of the Agreement. *See, Campisano v. Phillips*, 26 Ariz.App. 174, 178, 547 P.2d 26, 30 (1976) (plain language of contract must control when language not reasonably subject to different interpretation).

■ Finally, while Goodman alleges that she was given assurances during the interview process that so long as she performed her duties and responsibilities as a sales rep-

resentative, she could expect continued employment with B & W, such parol evidence cannot be admitted to contradict the terms of the fully integrated employment Agreement. *See, e.g., Taylor v. State Farm Mut. Automobile Ins. Co.,* 175 Ariz. 148, 854 P.2d 1134 (1993); *Anderson v. Preferred Stock Food Markets, Inc.,* 175 Ariz. 208, 854 P.2d 1194 (App.1993); *see also, Comeaux,* 915 F.2d at 1271 n. 7 (under California law, verbal assurances that employee could be fired only for violations of company policy inadmissible to contradict terms of fully integrated employment contract).

■ The Arizona Supreme Court's decisions in *Leikvold* and *Wagenseller* modify the traditional employment at will doctrine by creating an "implied contract" exception. However, this exception was not intended to supplant the ability of parties to enter into written contracts governing their employment relationship. *See, Norman v. Recreation Centers of Sun City, Inc.,* 156 Ariz. 425, 429, 752 P.2d 514, 518 (App.1988). Indeed, *Wagenseller* makes clear that the court did not intend to overrule the long-accepted doctrine that a "court may determine as a matter of law the proper construction of contract terms which are clear and unambiguous." 710 P.2d at 1037. This is such a case, and the Court will not disturb the plain meaning of the parties' written employment Agreement.[4]

## III. CONCLUSION

Sharon Diane Goodman and Brown & Williamson Tobacco Corporation entered into a written employment agreement which expressly created a "hiring at will terminable at any time by either of the parties thereto." No evidence presented by Goodman creates a factual dispute under the governing substantive law as to whether the parties also entered into an implied agreement to terminate only for good cause. Thus, the Court hereby grants B & W's motion for summary judgment.

IT IS ORDERED granting B & W's motion for summary judgment (doc. # 21). The

4. Indeed, even if the Manual could be deemed to be part of the parties' employment contract, the

clerk of the court is directed to enter judgment accordingly.

language contained therein cannot be said to have modified the at-will relationship.